Todd OLSON, Plaintiff,

v.

Robert FARRAR, Defendant-Appellant,

MT. MORRIS MUTUAL INSURANCE COMPANY,
Intervenor-Defendant-Respondent.†

Court of Appeals

*No. 2009AP2385. Submitted on briefs August 6, 2010.
—Decided November 18, 2010.*

2010 WI App 165

(Also reported in 794 N.W.2d 245.)

† Petition for Review granted 4-12-11.

614

On behalf of the defendant-appellant Robert Farrar, the cause was submitted on the brief of *Michael L. Stoker*, La Crosse.

On behalf of the intervenor-defendant-respondent Mt. Morris Mutual Insurance Company, the cause was submitted on the brief of *Jeffrey T. Nichols, Stacy K. Luell,* and *Daniel K. Mullin* of *Crivello Carlson,* S.C., Milwaukee.

Before Lundsten, Higginbotham and Sherman, JJ.

¶ 1. SHERMAN, J. Robert Farrar appeals from an order of summary judgment in favor of Mt. Morris Mutual Insurance Company (Mt. Morris). The circuit court concluded as a matter of law that Mt. Morris has no duty to indemnify or defend Farrar, its insured, for any damages or claims arising from or related to an accident which occurred when Farrar was moving a mobile home with his tractor. We conclude that Mt. Morris failed to demonstrate that it was entitled to summary judgment and, therefore, we reverse the court's order and remand this case for further proceedings.

## BACKGROUND

¶ 2. Todd Olson filed a complaint against Farrar for damages allegedly sustained to Olson's mobile home and truck when Farrar moved Olson's mobile home to a new location with Farrar's tractor. Olson was following behind the tractor and the mobile home in his truck. The complaint alleged that while Farrar was pulling the mobile home, the tractor "stalled on a hill causing the trailer home to go backwards on the road and crash into [Olson's truck]." Olson alleged that as a result, his vehicle and the mobile home "were extensively damaged."

¶ 3. On the date that Farrar moved Olson's mobile home, Farrar was insured by an insurance policy issued by Mt. Morris. The policy, which provided Farrar with

personal liability coverage for property damage, specifically excluded from coverage " 'property damage' which results from the ownership, operation, maintenance, use . . . of 'motorized vehicles' . . . owned or operated by . . . an 'insured.' " However, an exception to the exclusion provided that Mt. Morris would pay in the event that "coverage is provided by an Incidental Motorized Vehicle or Watercraft Coverage." The policy contained the following pertinent incidental motorized vehicle coverage provisions:

### INCIDENTAL LIABILITY COVERAGES

This policy provides the following Incidental Liability Coverages. They are subject to all of the "terms" of Coverages L and M . . . .

. . . .

5.  **Motorized Vehicles**—"We" pay for the "bodily injury" or the "property damage" which:

    . . . .

    b. results from:

        . . . .

        2) a utility, boat, camp, or mobile home trailer. However, this coverage does not apply to "bodily injury" or "property damage" resulting from a trailer which:

    a) is carried on, towed by, or attached to a "motor vehicle" or a "recreational motor vehicle" . . . .

¶ 4. Mt. Morris intervened in the action and moved the circuit court to bifurcate issues relating to insurance coverage from the underlying liability issues. The court granted Mt. Morris's motion and stayed discovery pending a determination of coverage. Mt.

Morris subsequently moved the court for summary judgment. The motion sought a declaration that Mt. Morris owed no coverage for the action and the dismissal of it from the action.

¶ 5. The circuit court granted Mt. Morris's motion. The court ruled that there was no coverage under provision 5.b.2) because any property damage resulted from the tractor, not the mobile home.[1] Farrar appeals.

## STANDARD OF REVIEW

■■

¶ 6. "We review summary judgments de novo, applying the same methodology as the circuit court." *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2) (2007-08).[2]

[3]

¶ 7. This appeal requires us to interpret an insurance policy which presents a question of law reviewed

---

[1] Provision 5.b. of the policy also provided:

3) a "motorized vehicle" which is designed only for use off public roads and which is used mainly to service the "insured premises." However, this coverage does not apply to "bodily injury" or "property damage" which results from a "motorized vehicle" owned by an "insured" while used for recreational purposes away from the "insured premises," other than a golf cart while used for golfing purposes.

The circuit court ruled that there is no coverage under this provision of the policy because the tractor was not designed for use only off public roads. Farrar does not challenge on appeal this determination. We therefore do not address that issue.

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

independently of the circuit court's determination. *Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶ 24, 325 Wis. 2d 176, 784 N.W.2d 579.

## DISCUSSION

¶ 8.   Mt. Morris contends that summary judgment was appropriate in this case because the policy did not provide coverage for the accident and, therefore, Mt. Morris did not have a duty to defend or indemnify Farrar.

SCOPE OF OUR REVIEW

¶ 9.   Before we address the question of whether coverage for the accident existed under the policy, we first clarify the extent of our review in this case. Both Farrar and Mt. Morris contend that our review is limited to the allegations set forth within the "four corners" of the complaint and the provisions within the policy. We disagree.

¶ 10.   When a court is charged with determining whether an insurer has an initial duty to defend its insured, the court review is limited to the language of the insurance contract and the allegations contained within the four corners of the complaint. *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. In that situation the court is not permitted to look to extrinsic facts or evidence beyond the four-corners of the complaint. *Id.*, ¶ 27. Recent decisions have made clear, however, that when an insurer has not refused to provide a defense prior to a determination of coverage and the question before the court is not whether the insurer has an

initial duty to defend its insured but rather whether coverage is provided under the policy in question, the court's review is not limited by the four-corners rule. *See, e.g., Id.*, ¶¶ 28–29; *Baumann v. Elliott*, 2005 WI App 186, ¶¶ 7–11, 286 Wis. 2d 667, 704 N.W.2d 361.

¶ 11.   Prior to a determination of coverage, an insurer may be required to furnish a free defense to its insured, *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 235, 522 N.W.2d 261 (Ct. App. 1994), and a refusal to do so may be a breach of the insurer's duty to defend. *Baumann*, 286 Wis. 2d 667, ¶ 9. However, after a court determines that coverage does not exist under the policy, an insurer is no longer under obligation to provide a defense. *Kenefick*, 187 Wis. 2d at 235. An insurer may dispute the issue of coverage without breaching any initial duty to defend by:   (1) seeking a declaratory judgment; (2) entering into an agreement with the insured to defend while retaining the right to challenge coverage; (3) affording a defense under a reservation of right; or (4) seeking a bifurcated trial in which the circuit court decides the issue of coverage in an action separate from the action on the merits of the complaint. *Baumann*, 286 Wis. 2d 667, ¶ 8. In this case, Mt. Morris sought bifurcation of the trial and then sought summary judgment on the issue of coverage. Accordingly, we are "beyond the initial duty to defend stage of the proceedings" and are not constrained by the four-corners rule. *Estate of Sustache*, 311 Wis. 2d 548, ¶ 28.

COVERAGE UNDER THE POLICY

¶ 12.   When determining whether coverage is provided under the terms of an insurance policy, we first

620

"examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. If, however, an initial grant of coverage in the insuring agreement is triggered by the claim, "we next examine the various exclusions to see whether any of them preclude coverage." *Id.* Policy exclusions are narrowly or strictly construed and we resolve any ambiguities in favor of coverage. *Sass v. Acuity*, 2009 WI App 32, ¶ 6, 316 Wis. 2d 752, 765 N.W.2d 582. If it appears that an exclusion precludes coverage, "we then look to see whether any exception to that exclusion reinstates coverage." *American Family Mut. Ins. Co.*, 268 Wis. 2d 16, ¶ 24. "Our goal in interpreting insurance contracts is to discern and give effect to the intent of the parties." *Folkman v. Quamme*, 2003 WI 116, ¶ 16, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 13. Under provision 5.b.2) of the policy's "Motorized Vehicles" incidental coverage, the policy provides incidental liability coverage for property damage "result-[ing] from . . . a . . . mobile home trailer" unless the property damage "result[ed] from a trailer which: a) is carried on, towed by, or attached to a 'motor vehicle' or a 'recreational motor vehicle.' " The policy excludes from coverage property damage resulting from a motorized vehicle unless coverage was provided under the policy's incidental motorized vehicle provisions. The policy also excludes from coverage property damage if the property is "occupied by, used by, or in the care of an 'insured.' " There appear to be no exceptions to these exclusions.

¶ 14. Thus, for there to be coverage in the present case under the policy's motorized vehicle incidental

liability coverage: (1) the property damage must have resulted from a "mobile home trailer"; (2) the "trailer" must not have been "towed by, or attached to a 'motor vehicle' "; and (3) the property damaged must not have been "occupied by, used by, or in the care of" Farrar.

### 1. WHETHER OLSON'S PROPERTY DAMAGE RESULTED FROM A "MOBILE HOME TRAILER"

■

¶ 15. Farrar contends that the policy provides coverage because, under the policy language in provision 5.b.2), the property damage to Olson's mobile home and truck "result[ed] from . . . a . . . mobile home trailer." Mt. Morris contends that neither the damage to Olson's mobile home nor the damage to Olson's truck "result[ed] from" Olson's "mobile home trailer."[3] Rather, Mt. Morris argues that the undisputed evidence shows that the damage resulted from Farrar's tractor.

¶ 16. Mt. Morris interprets the phrase "resulted from" to mean the catalyst for the accident. And, according to Mt. Morris, the undisputed evidence in this case indicates the catalyst was the inability of Farrar's tractor to pull Olson's mobile home. However, "resulted from," as applied here, could also reasonably be interpreted to mean that the damage results from the trailer striking something else.

---

[3] The circuit court questioned whether a "mobile home trailer" was involved in the accident and stated that it could "make [a] reasonable inference from the facts listed in the complaint that a mobile home trailer wasn't used." Farrar maintains that Olson's mobile home was a "mobile home trailer" under the terms of the policy and this assertion is not disputed by Mt. Morris on appeal.

¶ 17.   If words or phrases in a policy of insurance are susceptible to more than one reasonable interpretation, that language is ambiguous. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 231, 564 N.W.2d 728 (1997). We resolve any ambiguities in a policy in favor of coverage, and narrowly construe exclusion clauses against the insurer. *Id.* at 230. The phrase "resulted from" in the policy is susceptible to more than one reasonable interpretation and is therefore ambiguous. Resolving this ambiguity in favor of coverage, we conclude that the damage in this case "resulted from" Olson's mobile home trailer.

2. Whether the "Trailer" was
Attached to a "Motor Vehicle"

¶ 18.   Provision 5.b.2) contains an exception to coverage that applies when the trailer is "attached to a 'motor vehicle.' " Mt. Morris argues that this exception applies because it is undisputed that the trailer was both towed by and attached to the tractor, which it maintains is a "motor vehicle" within the meaning of the policy. The policy defines a "[m]otor vehicle" as "a 'motorized vehicle,' a trailer, or a semi-trailer, and all attached machinery or equipment, if:   a. it is subject to 'motor vehicle' registration; or b. it is designed for use on public roads." Mt. Morris contends that Farrar's tractor is a "motorized vehicle," because it was designed for use on public roads. Mt. Morris points to the fact that the tractor was being operated on a public road at the time of the accident, as well as Wis. Stat. §§ 341.05 and 347.22, which it claims establish that "a farm tractor is designed to be used on public roads as a matter of law."

¶ 19. "Motor vehicle" is defined by the policy as a motorized vehicle designed for use on public roads. The question in this case is whether Farrar's tractor was designed for use on public roads. Unless a term is technical or specially defined, it is construed according to its common and approved usage, which may be established by resort to recognized dictionaries. *Northwest Properties v. Outagamie County*, 223 Wis. 2d 483, 490, 589 N.W.2d 683 (Ct. App. 1998). According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 611 (1993), "design" is defined as "to devise or propose for a specific function." "Use" is defined as "to put into action or service," and "to carry out a purpose or action by means of." *Id.* at 2523–2524.

¶ 20. The flaw in Mt. Morris's argument is that it does not point to undisputed evidence showing that any aspect of the particular tractor in this case was *designed* for highway use.

¶ 21. The tractor at issue is a Massey Ferguson model number 1130. The manual for the tractor makes plain that the manufacturer anticipates that a user will sometimes operate the tractor on public roads. For example, the manual asks: "Will you at all times use the SLOW MOVING VEHICLE sign and warning lights when moving your equipment on the highway?" The manual also recommends that the operator of the tractor "[u]se safety lights and SMV Emblem when equipment is being driven on the road or highway." But the relevant question is not whether the manufacturer anticipated that the tractor would be operated on public roads, but whether the tractor, or some aspect of it, was designed for such use. On this topic the submissions are bare. Nothing in the manual suggests that the tractor has any features designed to make it more road worthy. For example, there is no evidence that it came equipped with

624

warning lights designed for safer travel on highways. In addition, undisputed averments show that Farrar's tractor had "never had brake lights, tail lights, turn signals or other safety devices for highway use," and that it had always been outfitted with "field tires," rather than tires meant for highway use. Although the submissions describe the tractor's current equipage, they do not address how the tractor was originally equipped.

¶ 22. Because Mt. Morris fails to point to any undisputed facts showing Farrar's tractor, or any aspect of it, was *designed* for use on a highway, we conclude it does not meet the policy's definition of a "motor vehicle," namely, a motorized vehicle "designed for use on public roads." The circuit court erred in concluding otherwise.

### 3. WHETHER COVERAGE IS PRECLUDED BY AN EXCLUSION IN THE MT. MORRIS POLICY CONCERNING PROPERTY USED BY OR IN THE CARE OF THE INSURED

¶ 23. Mt. Morris argues that even if coverage is provided under provision 5.b.2), coverage is nevertheless precluded by a separate exclusion in the policy for damage caused to property that is used by or in the care of the insured.[4] The exclusion in question provides as follows:

2. **Additional Exclusions That Apply Only to Coverage L** – Coverage L does not apply to:

. . . .

    d.  damage to property that is rented to, occupied by, used by, or in the care of an "insured," except for "property damage" to an "insured premises" caused by fire, smoke, or explosion.

---

[4] Although the circuit court did not reach this issue, it was raised by Mt. Morris.

¶ 24. Mt. Morris contends that Olson's mobile home was "in the care of Farrar" based on an allegation within the complaint that "Farrar was pulling the trailer home with the tractor he was driving." Mt. Morris does not, however, contend that Olson's truck was "used by, or in the care of" Farrar. Mt. Morris recognizes that in Wisconsin, "care, custody or control" exclusions are ambiguous and are construed against the insurer. *See Silverton Enters., Inc. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 670, 422 N.W.2d 154 (Ct. App. 1988). Mt. Morris argues, however, that Farrar was performing work that required him to have supervision over Olson's mobile home and, therefore, as in *Silverton*, Mt. Morris Policy's "care, custody or control" exclusion applies to preclude coverage.

¶ 25. In *Silverton*, the court stated that "if the property damaged is under the supervision of the insured and that supervision is a necessary element of the work involved, the property is in the care, custody or control of the insured." *Id.* at 670–71. The court explained that "[t]he exclusion 'is meant to apply to the essential work being done by the insured.' " *Id.* at 671 (citing *Meiser v. Aetna Cas. & Sur. Co.*, 8 Wis. 2d 233, 240, 98 N.W.2d 919 (1959)). In *Silverton*, automobiles had been left with the insureds for repair. *Id.* The court concluded that as such, the automobiles were under the insureds' supervision which was "a necessary element of the repair," and thus the automobiles were "within the care, custody or control exclusion" at issue. *Id.*

¶ 26. According to Mt. Morris, the undisputed evidence that Farrar was transporting Olson's mobile home approximately eight miles demonstrates that Farrar had supervision over the mobile home and, therefore, the mobile home was within the Mt. Morris policy's "care, custody or control exclusion." We disagree.

¶ 27. The present situation is distinguishable from that in *Silverton*. In *Silverton*, the automobiles were left by their owners in the sole possession of the insureds for repairs to be done by the insureds, not the owners. Here, however, the undisputed facts show that Olson's mobile home had not been left in Farrar's sole possession. The mobile home was being towed by Farrar, but Olson was also present—he apparently assisted in the moving of the mobile home by following behind Olson's trailer as it towed the mobile home.

¶ 28. Because the circumstances in this case do not fall within the exception carved out by *Silverton* to the controlling law in Wisconsin that "care, custody, or control" exclusions are ambiguous, *see Id.* at 670, we conclude that the "occupied by, used by, or in the care of an 'insured' " provision in the policy at issue in this case is ambiguous and construe it in favor of Farrar.

## CONCLUSION

¶ 29. For the reasons discussed above, we conclude that the damage in this case resulted from a "mobile home trailer" and that the property damaged was not "occupied by, used by, or in the care of" Farrar. We further conclude that Mt. Morris has not pointed to undisputed facts showing that Farrar's tractor was "designed for use on public roads." Accordingly, we reverse the circuit court's order for summary judgment in favor of Mt. Morris and remand this matter for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.