# Dale P. Veto and Becky S. Veto, Plaintiffs-Appellants,

v.

# American Family Mutual Insurance Company, Defendant-Respondent.†

Court of Appeals

*No. 2011AP557. Submitted on briefs November 2, 2011.
—Decided April 12, 2012.*

2012 WI App 56

(Also reported in 815 N.W.2d 713.)

† Petition for Review Filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jamie Stock-Retzloff* and *Michael J. Luebke* of *Gingras, Cates & Luebke, S.C.,* Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David J. Pliner* of *Corneille Law Group, LLC,* Madison.

Before Vergeront, Higginbotham and Sherman, JJ.

¶ 1. SHERMAN, J. Dale P. Veto and Becky S. Veto appeal from a judgment of the circuit court denying the Vetos' motion for declaratory judgment against American Family Mutual Insurance Company and dismissing the Vetos' complaint. The Vetos brought suit against American Family seeking declaratory relief from the

court that American Family cannot reduce the amount paid to them under an endorsement to their umbrella insurance policy issued by American Family by the amount separately paid to Dale in workers' compensation benefits. The circuit court determined that a clause in the underlying automobile policy which allowed the company to reduce the coverage by the amount of the workers' compensation payment was incorporated into the umbrella policy endorsement and dismissed the Vetos' complaint. We reverse.

## BACKGROUND

¶ 2. While acting within the scope of his employment as a Dane County deputy sheriff, Dale was seriously injured when he was struck by the uninsured driver of a stolen car. At the time of the accident, the Vetos were covered under two policies of insurance issued by American Family: a family car policy that included uninsured motorist coverage with policy limits of $100,000 each person and $300,000 each accident, and a personal liability umbrella policy with a policy limit of $1,000,000 for each occurrence. Because the accident occurred during the course of his employment, Dale was also covered under Dane County's workers' compensation insurance plan.

¶ 3. As a result of his injuries, Dale received a payment under the county's workers' compensation insurance policy of $344,870.90. However, the Vetos' total injuries exceeded $1,000,000, and they made demand upon American Family to pay them the policy limit under the umbrella policy. American Family made a payment to the Vetos of $655,129.10, which represented the $1,000,000 policy limit less the $344,870.90 workers' compensation payment Dale received. According to American Family, the following reducing clause in

the Vetos' underlying automobile policy was incorporated into the umbrella policy and reduced the umbrella policy's limits of liability from $1,000,000 by the amount paid to Dale in workers' compensation benefits:

> The limits of liability of this coverage will be reduced by:
>
> . . . .
>
> 3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.[1]

American Family's assertion was based upon the following language in the endorsement to the umbrella policy: "However, Uninsured and Underinsured Motorists Coverage under this policy will be no broader than the **underlying insurance**."

¶ 4. The Vetos brought the present action seeking a declaration that American Family cannot reduce the policy benefit owed to the Vetos under the umbrella policy by the amount received by Dale through his workers' compensation insurance and an order directing American Family to pay the Vetos the remaining benefits due under the umbrella policy.

¶ 5. The circuit court denied the Vetos declaratory judgment and dismissed their action. The court determined that, although the endorsement in the umbrella policy addressing uninsured motorists did not contain a reducing clause, language in the endorsement unambiguously incorporated the reducing clause in the Vetos' underlying automobile insurance policy. The Vetos appeal. Additional facts will be discussed below as necessary.

---

[1] Since the policy limit of the uninsured motorist coverage under the auto policy is $100,000, no benefit was available after offsetting for the $344,870.90 workers' compensation payment.

## DISCUSSION

### A. Standard of Review

██ ██

¶ 6. We review a circuit court's decision on declaratory judgment for an exercise of discretion. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the exercise of such discretion turns upon a question of law, we review the question of law independently of the circuit court's determination. *See id.* "Here, the circuit court's grant of declaratory judgment turned upon its interpretation of an insurance policy, which presents a question of law." *Olson v. Farrar*, 2012 WI 3, ¶ 24, 338 Wis. 2d 215, 809 N.W.2d 1.

¶ 7. When determining insurance coverage under a policy, we first consider whether the policy's insuring agreement makes an initial grant of coverage. *Olson v. Farrar*, 2010 WI App 165, ¶ 12, 330 Wis. 2d 611, 794 N.W.2d 245. If "an initial grant of coverage in the insuring agreement is triggered by the claim, 'we next examine the various exclusions to see whether any of them preclude coverage.' Policy exclusions are narrowly or strictly construed and we resolve any ambiguities in favor of coverage." *Id.* (citations omitted). " 'Our goal in interpreting insurance contracts is to discern and give effect to the intent of the parties.' " *Id.* (citation omitted). To that end, "the policy [is] construed as it would be understood by a reasonable person in the position of the insured." *St. John's Home of Milwaukee v. Continental Cas. Co.*, 147 Wis. 2d 764, 781, 434 N.W.2d 112 (Ct. App. 1988).

## B. Uninsured Motorists Endorsement in Umbrella Policy Does Not Unambiguously Incorporate Reducing Clause From Auto Policy

■

¶ 8. Uninsured motorists liability coverage under the Vetos' personal liability umbrella policy is granted in an "Uninsured and Underinsured Motorists Coverage Following Form Endorsement."[2] While the terms of the endorsement contain a number of limitations and

---

[2] The endorsement is set forth in full:

UNINSURED AND UNDERINSURED MOTORISTS
COVERAGE FOLLOWING FORM ENDORSEMENT

This endorsement modifies such insurance as is afforded by this policy and replaces any Uninsured and Underinsured Motorists Coverage Following Form Endorsement previously a part of this policy.

For an additional premium, when Uninsured and Underinsured Motorists Coverage is available in the **underlying insurance** listed in the declarations, this policy applies to **bodily injury** for which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured** and must be caused by accident and arise out of the use of the **uninsured motor vehicle** or the **underinsured motor vehicle**.

This coverage applies only to the vehicles for which Uninsured and Underinsured Motorists Coverage is shown in the declarations. This coverage applies only to damages in excess of the **primary limit**.

However, Uninsured and Underinsured Motorists Coverage under this policy will be no broader than the **underlying insurance**. (Emphasis added.)

DEFINITIONS

Definition 15 is deleted and replaced by the following:

15. **Primary limit** is the total of:

a. the applicable **limits** of the **underlying insurance** listed in the declarations;

396

conditions, it contains neither a reducing clause nor any express incorporation by reference of the terms of the uninsured motorists coverage in the underlying auto policy.

¶ 9. The central issue before us is thus whether the reducing clause in the uninsured and underinsured motorists coverage of the underlying auto policy is unambiguously incorporated into the endorsement to the umbrella policy,[3] which provides in relevant

b. the amount recoverable under any other insurance available to the **insured**; and

c. the amount recoverable from or on behalf of the liable party, but not less than the required **underlying insurance limits**.

These additional definitions apply:

23. **Uninsured motor vehicle** is defined in the **underlying insurance** applicable to the loss and shown in the declarations.

24. **Underinsured motor vehicle** is defined in the **underlying insurance** applicable to the loss and shown in the declarations.

### CONDITIONS

Condition 9. **Required Underlying Insurance Limits - Underlying Exposures** is amended to add the following **Required Underlying Insurance Limits**.

| Types of Liability Exposures | Minimum Required Underlying Limits |
|---|---|
| Car/Motorcycle and Recreational Motor Vehicle Uninsured and Underinsured Motorists Coverage | $100,000 per Person $300,000 per Occurrence or $300,000 per Occurrence (Single Limit Policy) |

All other terms remain unchanged.

[3] The reducing clause in the automobile insurance policy is included in "**PART III – UNINSURED MOTORISTS COVERAGE**" under "**LIMITS OF LIABILITY**" in the "**WISCONSIN FAMILY CAR POLICY**," and provides:

397

part: "However, Uninsured and Underinsured Motorists Coverage under this policy will be no broader than the **underlying insurance**."

¶ 10. American Family argues that the phrase "no broader than the **underlying insurance**" is a "catchall" phrase intended to incorporate all of the terms of the uninsured motorists coverage from the automobile policy into the umbrella policy uninsured motorists endorsement.

¶ 11. The Vetos, on the other hand, argue that the phrase is ambiguous and that the reducing clause is therefore not incorporated into the endorsement. The circuit court agreed with American Family, concluding "that the 'no broader than the underlying insurance' policy language unambiguously incorporates all of the terms of the [uninsured motorists] coverage part from the underlying [automobile] policy, including the underlying policy's reduction clause."

¶ 12. Language in an insurance policy is ambiguous if the words or phrases of the policy are susceptible to more than one reasonable interpretation. *Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶ 8, 257 Wis. 2d 401, 651 N.W.2d 318. Ambiguities are resolved in favor of coverage, advancing the insured's reasonable

---

The limits of liability of this coverage will be reduced by:

1. A payment made by the owner or operator of the **uninsured motor vehicle** or organization which may be equally liable.

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.

expectations of coverage. *Id.* To determine whether a policy provision is ambiguous, we read the provision in the context of the whole policy, rather than isolating a small part of the language from the whole. *Folkman v. Quamme*, 2003 WI 116, ¶ 21, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 13. Accordingly, we interpret the language at issue here, "However, Uninsured and Underinsured Motorists Coverage under this policy will be no broader than the **underlying insurance**," in the context of the entire endorsement. Doing so, we reject the interpretation that the phrase "no broader than" incorporates into the umbrella policy all of the terms of the uninsured motorists coverage in the underlying policy. We begin with the language itself.

¶ 14. The phrase "no broader than" is a vague term not defined in the umbrella policy. BLACK'S LAW DICTIONARY (9th ed. 2009) defines neither "no broader than" nor "broad" itself, although it does define both "broad-form policy"[4] and "broad-form insurance."[5] These definitions do not help resolve the issue, since applying them simply tells us that "no broader than" means that the endorsement does not broaden the coverage that is available under the underlying policy, which is no more than a tautology and adds nothing to our understanding of whether or not the reducing clause is included within the concept of the breadth of coverage.

---

[4] BLACK'S LAW DICTIONARY 877 (9th ed. 2009) defines "broad-form policy" as "[a] policy that offers broad protection with few limitations. This policy offers greater coverage than a basic-form policy, but less than an open-perils policy."

[5] BLACK'S LAW DICTIONARY 871 defines "broad-form insurance" as "[c]omprehensive insurance. This type of insurance usu. takes the form of an endorsement to a liability or property policy, broadening the coverage that is typically available."

¶ 15. Standard dictionary definitions of "broad" also do not elucidate the meaning of "no broader than" in the umbrella policy endorsement. MERRIAM-WEBSTER'S ON-LINE DICTIONARY, *http://www.merriam-webster.com/dictionary/broad* (last visited Apr. 9, 2012), provides eight different definitions for the term "broad." The most applicable to our understanding of how this term is used in the endorsement at issue is the following definition: "widely applicable or applied: general <a *broad* rule>." Likewise, DICTIONARY.COM, *http://dictionary.reference.com/browse/broad* (last visited Apr. 9, 2012), defines "broad" as "of great breadth" and "not limited or narrow; of extensive range or scope." These definitions provide no insight into whether the phrase "no broader than" indicates that the reducing clause from the underlying automobile policy must be incorporated into the umbrella policy endorsement. Without the reducing clause, is the uninsured motorists coverage under the umbrella policy more "widely applicable or applied," less "limited or narrow" or of less "extensive range or scope" than the uninsured motorists coverage under the underlying automobile policy? Or, is the coverage merely reduced in monetary value?

¶ 16. Further, viewing the "no broader than" phrase in the context of the entire endorsement fails to lead to the unambiguous conclusion that a reasonable person in the position of the insured would understand the term as incorporating all of the terms of the underlying coverage. The uninsured motorists coverage in the underlying automobile policy has a policy limit of $100,000 per person. If all of the terms of the underlying coverage were incorporated into the coverage provided by the umbrella policy endorsement, the automobile policy's uninsured motorists coverage limit would necessarily be incorporated. Incorporating the lower limit of coverage contained in the automobile policy

400

would negate the value of having $1,000,000 of additional coverage in the umbrella policy. A reasonable policyholder would not pay the additional premium for an endorsement in order to get nothing additional. We reject a policy interpretation which leads to absurd results. *Wilson Mut. Ins. Co. v. Risler*, 2011 WI App 70, ¶ 12, 333 Wis. 2d 175, 798 N.W.2d 898. Thus, at least one particular term in the underlying uninsured motorists coverage, the dollar limit of coverage, is not unambiguously incorporated into the umbrella policy endorsement. Standing alone, this does not resolve whether the reducing clause is so incorporated, however.

¶ 17. The limit of coverage affects only the dollar amount of coverage and not its scope. Since incorporating the coverage limit of the underlying policy into the umbrella policy endorsement would lead to absurd results, it seems clear that the limit of coverage is not intended by the parties to be included in the "no broader than" language of the endorsement. Likewise, however, the reducing clause affects only the dollar amount of coverage and not its scope. Nothing in the "no broader than" language alerts a reasonable policyholder to the difference between the two coverage limitations.

■■

¶ 18. Further, we construe insurance contracts so that "none of the language [is] discarded as superfluous or meaningless." *Stubbe*, 257 Wis. 2d 401, ¶ 10. Yet the endorsement contains several definitions and some additional conditions that would be meaningless if the terms of the underlying uninsured motorists coverage were simply incorporated in full.[6]

¶ 19. Assuming without deciding that American Family's interpretation of the policy (that the "no broader than" language incorporates the reducing clause

_____

[6] See footnote 2.

in the uninsured motorists coverage from the underlying automobile policy) is reasonable, that is one reasonable interpretation. For the reasons discussed in the preceding five paragraphs, this court concludes that it is also reasonable to interpret that the "no broader than" language refers to the scope of coverage, not the dollar amount of recovery. There being two reasonable interpretations of the policy language, it is ambiguous as a matter of law. *Id.*, ¶ 8. Therefore the reducing clause does not apply to the umbrella coverage.[7]

## CONCLUSION

¶ 20. For the reasons discussed above, we reverse the circuit court and remand for declaratory judgment that the UNINSURED AND UNDERINSURED MOTORISTS COVERAGE FOLLOWING FORM ENDORSEMENT does not incorporate the reducing clause from the underlying automobile policy's uninsured motorists coverage.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[7] The Vetos also argue that the language in the endorsement is contextually ambiguous as applied to incorporate the reducing clause from the underlying uninsured motorists coverage and that applying the language in that manner would result in American Family getting "double credit" for the workers' compensation recovery. As we have already decided that the language is ambiguous and that, consequently, the reducing clause does not apply to the endorsement, we do not reach these issues. *Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised).