David SCHLEUSNER and Billie Jo Schleusner,
Plaintiffs-Respondents,†

v.

IMT INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 2006AP265. Submitted on briefs October 2, 2006.
—Decided October 17, 2006.*

2006 WI App 240

(Also reported in 724 N.W.2d 430.)

† Petition to review denied 2/12/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christine A. Gimber* and *Ryan J. Steffes* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jason W. Whitley* of *Novitzke, Gust, Sempf & Whitley* of Amery.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. IMT Insurance Company appeals a summary judgment allowing David Schleusner to recover benefits under the uninsured motorist (UM) portion of his automobile insurance policy. Because the policy unambiguously excludes coverage for Schleusner's injuries, we reverse the judgment and remand with directions to grant summary judgment in favor of IMT.

## BACKGROUND

¶ 2. Schleusner was injured on August 29, 2004, while he was acting as flagman at the Burnett County Fair demolition derby. During the derby, Schleusner went onto the track to assist a driver who was being burned by steam from his vehicle. As he was reaching into the disabled vehicle, Schleusner was struck by another vehicle driven by Dale Smith. At the time, Schleusner was covered by a UM policy issued by IMT.

¶ 3. Smith's vehicle was a modified 1975 Chrysler Newport. Prior to the demolition derby, Smith had removed all glass, including lights and mirrors, from the Newport, removed the seats, and welded patches onto the doors to keep them from opening. He also added braces designed to protect him from impacts in the driver side door and a gas tank designed to withstand impacts. He did not reinforce the frame or add any modifications that would have made the vehicle stronger. Because of these modifications, the car could not be driven on public roadways. Smith never operated it on the road or registered it for highway use during the time that he owned it. Smith was not insured at the time of the accident.

¶ 4. On February 7, 2005, Schleusner filed a declaratory judgment action against IMT. Schleusner alleged the accident was due to Smith's negligence, Smith was an uninsured motorist, and Schleusner was therefore entitled to recovery under his IMT UM policy. In response, IMT argued coverage was barred by an exception in the policy for injuries caused by "vehicles or equipment designed mainly for use off public roads." The circuit court, on cross motions for summary judgment, granted summary judgment in favor of Schleusner. The court held the Newport was originally "de-

signed mainly for use on public roads" by Chrysler and that "subsequent changes, modifications, alterations, and redesign" did not change the Newport's initial intended purpose or intended use.

## STANDARD OF REVIEW

¶ 5. The meaning of an insurance contract is a question of law that we review without deference to the circuit court, but benefiting from its analysis.[1] *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65.

## DISCUSSION

¶ 6. "An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. The language of the policy is construed as it would be understood by a reasonable insured, and the reasonable expectations of coverage of an insured should be furthered by the interpretation given. *Frost ex rel. Anderson v. Whitbeck*, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225. Ambiguities are resolved in favor of coverage. *Id.*, ¶ 19.

¶ 7. When interpreting the language of the policy, we also consider the purpose or subject matter of the insurance, the situation of the parties, and the circum-

---

[1] The parties filed cross motions for summary judgment and do not allege any factual dispute. We therefore treat this as the equivalent of a stipulation of facts permitting the court to decide the case on the legal issues. *See Varda v. Acuity*, 2005 WI App 167, ¶ 4 n.2, 284 Wis. 2d 552, 702 N.W.2d 65.

stances surrounding the making of the contract. *Id.*, ¶ 22. Just as an unambiguous clause may become ambiguous when viewed in the context of the entire policy, a clause may not be isolated to create ambiguity if its meaning is unambiguous when considered in the context of the policy as a whole. *Folkman*, 264 Wis. 2d 617, ¶ 21.

¶ 8. As relevant here, the IMT UM policy provides:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" . . .

. . . .

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

 1. To which no bodily injury liability bond or policy applies at the time of the accident.

. . . .

However, "uninsured motor vehicle" does not include any vehicle or equipment:

. . . .

 5. Designed mainly for use off public roads while not on public roads.

¶ 9. The parties agree that coverage hinges on whether the Newport was "designed mainly for use off public roads" under the policy. If so, the exclusion applies, the Newport is not an "uninsured motor vehicle," and no coverage is available. If not, the Newport is an "uninsured motor vehicle" as defined in the policy and coverage is available.

373

¶ 10. The parties advance conflicting dictionary definitions of "designed" in support of their positions. Schleusner argues "design" means "to draw a preliminary figure, outline, or sketch (as for a machine, structure, or work of art)." WEBSTER'S THIRD NEW INT'L DICTIONARY 611 (Unabr. 1993). In other words, "design" refers to the manufacturer's original design for the vehicle. He argues any other definition is an attempt to graft "or modified" onto the language of the exclusion.

¶ 11. IMT argues the only reasonable definition of "design" is something more akin to "a particular purpose held in view by an individual or group: a planned intention." *Id.*[2] In other words, "design" refers to the design of the vehicle—its intended purpose or intended use—at the time of the accident. IMT argues its definition is not an attempt to add language to the exclusion; rather, it is an attempt to define the existing policy language.

██

¶ 12. We agree with IMT. Considered in isolation, either of these definitions could be reasonable. However, IMT's definition of the word "designed" is the only one a reasonable insured could adopt here, for three reasons. IMT's definition is the only one: (1) consistent with the language in the remainder of the UM policy; (2) consistent with the purpose of its UM policy and the purpose of the exclusion here; and (3) that produces consistent, predictable results that square with a reasonable insured's expectations of coverage.

¶ 13. IMT's interpretation is the only interpretation consistent with the remainder of the language in its UM policy. The remainder of the policy, including all other provisions dealing with UM coverage, defines cov-

---

[2] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY contains over a dozen other definitions as well.

erage according to existing conditions at the time of the accident. For example, an "uninsured motorist" is a motorist without coverage at the time of the accident. Whether a motorist had coverage prior to an accident or acquired coverage afterward is irrelevant. In the same way, a vehicle is not an "uninsured motor vehicle" if it is "owned by any government unit or agency" or "while located for use as a residence or premises." Both of these definitions focus on existing conditions at the time of the accident. In addition, the other part of the exclusion at issue here—the phrase "while not on public roads"—also refers to existing conditions at the time of the accident.

¶ 14. If Schleusner's definition is correct, "designed" refers to conditions in 1975, not existing conditions at the time of the accident. That simply is not a position a reasonable insured could take. A reasonable insured would realize existing conditions at the time of the accident governed the remainder of the policy, including all other exclusions from coverage. The insured could not reasonably choose a meaning of "designed" that referred to 1975 over one that referred to existing conditions at the time of the accident.

¶ 15. IMT's interpretation is also the only one consistent with the purpose of the UM policy and the exclusion. When an insured purchases UM coverage, he or she purchases personal, portable coverage that protects from injury in a motor vehicle accident. *Teschendorf v. State Farm Ins. Co.*, 2006 WI 89, ¶ 25, 717 N.W.2d 258. Here, Schleusner's definition would lead to results that would not track the purpose of UM coverage in any meaningful way. In its brief, IMT correctly points out that under Schleusner's definition of "designed," there would be coverage if Schleusner was injured while diving in a coral reef made of old cars, but no coverage if

Schleusner was injured by a modified military vehicle originally designed for off road use but now licensed as an ordinary vehicle.[3] These potential applications of the exclusion show how far Schleusner's interpretation diverges from the purpose of UM coverage and the policy here.

¶ 16. IMT's interpretation, on the other hand, produces consistent, predictable results that square with a reasonable insured's expectations of coverage. Vehicles whose intended use or purpose is on public highways as of the time of the accident would be covered, regardless of any previous design for another purpose. On the other hand, there would be no coverage for injuries caused by vehicles retrofitted for use as monster trucks, flower-beds, or coral reefs.[4]

¶ 17. We conclude IMT's policy unambiguously excludes coverage for Schleusner's injuries. Accordingly, we reverse the judgment and remand with directions to grant summary judgment in favor of IMT.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[3] The modified vehicle would have to be off road (for example, in a parking lot) for this to be true.

[4] Schleusner also argues that *State v. Martinez*, 210 Wis. 2d 396, 563 N.W.2d 922 (Ct. App. 1997) supports his definition of "designed." *Martinez* involved the meaning of a statute excluding "pipes . . . designed for use . . . with tobacco products" from the definition of drug paraphernalia. *Id.* at 405–06. However, the pipe in *Martinez* never underwent any post-manufacture modifications, and the statute in question indicated that post-manufacture modifications to the pipe would have been part of its "design." *See* WIS. STAT. § 161.572(2) (1993–94). *Martinez* therefore does not support Schleusner's position.