Todd OLSON, Plaintiff,

v.

Robert FARRAR, Defendant-Appellant,

MT. MORRIS MUTUAL INSURANCE COMPANY,
Intervenor-Defendant-Respondent-Petitioner.

Supreme Court

*No. 2009AP2385. Oral argument October 6, 2011.*
*—Decided January 31, 2012.*

2012 WI 3

(Also reported in 809 N.W.2d 1.)

215

218

219

For the intervenor-defendant-respondent-petitioner there were briefs by *Stacy Kay Luell, Jeffrey T. Nichols,*

*Daniel K. Mullin* and *Crivello Carlson, S.C.,* Milwaukee and oral argument by *Stacy Kay Luell.*

For the defendant-appellant there was a brief by *Joseph G. Veenstra, Cheryl M. Gill* and *Johns, Flaherty & Collins S.C.,* La Crosse and oral argument by *Joseph G. Veenstra.*

¶ 1. ANN WALSH BRADLEY, J. Mt. Morris Mutual Insurance Company seeks review of a published decision of the court of appeals reversing the circuit court's grant of a declaratory and summary judgment in its favor.[1] Todd Olson filed suit against Robert Farrar, alleging he was liable for property damage to Olson's trailer home and vehicle. Farrar's insurer, Mt. Morris, sought a declaration that it had neither a duty to defend nor a duty to indemnify Farrar under the terms of its insurance policy.

¶ 2. Mt. Morris contends that under the four-corners rule, the court should resolve this dispute with reference to the language contained solely within the four corners of the insurance policy and the factual allegations of the complaint. In addition, it asserts that the language of the policy does not give rise to a duty to defend because of certain coverage exclusions: (1) the property damage did not "result from" a "mobile home trailer"; (2) the "mobile home trailer" was attached to a "motor vehicle"; and (3) the "mobile home trailer" was "used by, or in the care" of Farrar, the insured, at the time of the accident. Because the duty to defend is broader than the duty to indemnify, Mt. Morris asserts that there is no duty to indemnify here.

---

[1] *Olson v. Farrar,* 2010 WI App 165, 330 Wis. 2d 611, 794 N.W.2d 245, reversing a decision of the circuit court for Monroe County, Todd L. Ziegler, Judge.

¶ 3. Given that Mt. Morris made an initial determination to appoint counsel for Farrar's defense until the question of coverage could be finally resolved by the court, we determine that the purpose of the four-corners rule has been served. It is not further implicated in this case.

¶ 4. Turning to the policy language of the exclusions, we apply a well-settled canon of insurance policy interpretation. We determine that the phrase "results from" is susceptible to more than one reasonable interpretation. We likewise determine that the definition of "motor vehicle" is susceptible to more than one reasonable interpretation. Accordingly, both of these policy provisions are ambiguous, and we construe them in favor of coverage.

¶ 5. Finally, although the factual record has not been well developed, it appears that there may be genuine issues of material fact regarding whether Olson's trailer home was "used by, or in the care of an insured" when it sustained property damage. Because the circuit court did not address this exclusion when it granted judgment, we remand to the circuit court for a determination on this issue. Accordingly, we affirm the court of appeals and remand to the circuit court for further proceedings.

I

¶ 6. Although there are disputes of fact, the following facts are undisputed. The plaintiff, Todd Olson, purchased a trailer home with the intention of moving it to a new location. Olson was acquainted with Robert Farrar, who owned a farm tractor. It is undisputed

Olson asked Farrar to provide some assistance with the move.[2]

¶ 7. Farrar hitched Olson's trailer home to his tractor and proceeded to drive to the new location, towing Olson's trailer home behind him. At one point during the eight-mile journey, Farrar's tractor stalled on a hill, and the trailer home rolled backwards. As it rolled backwards, Olson's trailer home crashed into Olson's vehicle.[3]

¶ 8. Olson filed suit against Farrar, alleging that Farrar did not have permission to move the trailer home more than a couple of feet. Olson alleged that Farrar was negligent because he "knew, or should have known, that his tractor was incapable of pulling [Olson's] trailer home for the approximately 8 miles up and down hills and around sharp corners." According to the complaint, Farrar was liable for the "extensive damage" to Olson's trailer home and vehicle.

¶ 9. Farrar tendered the defense of the suit to Mt. Morris Mutual Insurance Company, which had issued Farrar a farmowners policy. In addition to first-party coverage for direct physical loss to Farrar's property, the policy provides third-party coverage for liability incurred by Farrar, subject to the relevant exclusions.

¶ 10. Mt. Morris elected to provide an initial defense for Farrar pursuant to a reservation of rights. It

---

[2] The parties dispute the precise nature of Olson's request. According to Olson, he asked Farrar to rotate the trailer home so that it could be easily accessed by a moving company. By contrast, Farrar asserts that Olson asked him to tow the trailer home all the way to its new location, a distance of eight miles.

[3] Apparently, Olson was following behind Farrar's tractor in his own vehicle. This fact is not stated in the complaint. However, it is stated in Farrar's answer and the affidavit he subsequently filed with the court.

then moved to intervene, bifurcate the coverage issues from the issues related to liability and damages, and stay all proceedings on liability and damages. The circuit court granted this motion.

¶ 11. Mt. Morris moved next for "declaratory and summary judgment." It sought a declaration that "Mt. Morris owes no coverage" and an order "dismissing it from this action." It relied on two separate exclusions: an exclusion for liability resulting from the use of a motorized vehicle, and an exclusion for damage to property that is used by or in the care of an insured.

¶ 12. The first exclusion relied upon by Mt. Morris specifically excludes " 'property damage' which results from the ownership, operation, maintenance, use . . . of motorized vehicles . . . owned and operated by . . . an insured." An exception to that exclusion reasserts coverage if "coverage is provided by an Incidental Motorized Vehicle . . . Coverage."

¶ 13. The Incidental Coverage for Motorized Vehicles provides coverage for "property damage" that "results from" a "mobile home trailer," unless the mobile home trailer is attached to a "motor vehicle".[4] The policy defines "motor vehicle" as "a 'motorized vehicle,' . . . and all attached machinery or equipment if: a. it is subject to 'motor vehicle' registration; or b. it is designed for use on public roads."

¶ 14. The second exclusion relied upon by Mt. Morris is found in paragraph 2.d. of the exclusion section of the policy. It provides: "Coverage L does not apply to: . . . damage to property that is rented to, occupied by, used by, or in the care of an 'insured' . . . ."

---

[4] For the purposes of this opinion, we assume that Olson's trailer home is a "mobile home trailer," within the meaning of the policy language. Mt. Morris advances no developed argument to the contrary in this court.

¶ 15. Mt. Morris contended that in the court's summary judgment determination, extrinsic evidence was not admissible under the "four-corners" rule, and the court should decide the coverage question based only on the factual allegations in the complaint and the language of the policy. It asserted that under a four-corners analysis, it had no duty to defend Farrar. It further contended that because there was no duty to defend and because the duty to defend is broader than the duty to indemnify, there likewise could be no duty to indemnify Farrar.

¶ 16. Farrar contended that the policy provided coverage for the property damage. He argued that the Incidental Coverage for Motorized Vehicles was an applicable exception to the motorized vehicle exclusion, and it reasserted coverage for Olson's claims. Farrar further argued that the exclusion for property that is used by or in the care of an insured did not apply to the facts of the case.

¶ 17. In support of his arguments, Farrar submitted an affidavit setting forth his version of the accident as well as information about the tractor. He stated that the tractor was a Massey Ferguson Model Number 1130, that it was equipped with field tires, and that it was not equipped with brake lights, tail lights, turn signals, or other safety devices for highway use.

¶ 18. Mt. Morris reasserted its argument that the four-corners rule precluded consideration of Farrar's affidavit. In the alternative, it submitted portions of the manufacturer's manual by affidavit. In relevant part, the section on safety precautions stated: "Use safety lights and [Slow Moving Vehicle] Emblem when equipment is being driven on the road or highway. (Check with local authorities for possible legal limitations.)"

¶ 19. During the hearing in the circuit court, Olson's attorney offered to amend the complaint to conform to the terms of the insurance policy. It appears that the circuit court concluded that an amendment was unnecessary. Although the court made reference to the extrinsic evidence, it did not specifically determine whether the four-corners rule applied.

¶ 20. The dispositive question during the hearing was whether Farrar's tractor was a "motor vehicle" within the terms of the policy. The circuit court acknowledged that "this is a very close issue." It nevertheless concluded that the tractor was a "motor vehicle" and therefore, there was no coverage under the policy. The circuit court did not address the exclusion for damage to property "used by, or in the care of an insured."

¶ 21. The court of appeals reversed. *Olson v. Farrar*, 2010 WI App 165, 330 Wis. 2d 611, 794 N.W.2d 245. It concluded, "we are beyond the initial duty to defend stage of the proceedings and are not constrained by the four-corners rule." *Id.*, ¶ 11. It further determined that the property damage "resulted from" a mobile home trailer and the property that was damaged was not "used by, or in the care of" Farrar. *Id.*, ¶ 29. Finally, it concluded that "Mt. Morris has not pointed to any undisputed facts showing that Farrar's tractor was 'designed for use on public roads.' " *Id.* The court of appeals remanded to the circuit court for further proceedings.

II

██

¶ 22. In this case, we are asked to determine whether the four-corners rule applies. The proper application of the four-corners rule presents a question of

law, which we decide independently of the determinations rendered by the circuit court and the court of appeals. *See Estate of Sustache v. American Family Mut. Ins. Co.,* 2008 WI 87, ¶¶ 27–29, 311 Wis. 2d 548, 751 N.W.2d 845.

■■

¶ 23. We are also asked to determine whether the circuit court properly granted Mt. Morris's motion for declaratory and summary judgment. Whether summary judgment is properly granted is a question of law. *Id.,* ¶ 17. Summary judgment is appropriate when the record demonstrates that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Id.,* ¶ 17.

■

¶ 24. The grant or denial of a declaratory judgment is addressed to the circuit court's discretion. *Jones v. Secura Ins. Co.,* 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination. *Bellile v. Am. Family Mut. Ins. Co.,* 2004 WI App 72, ¶ 6, 272 Wis. 2d 324, 679 N.W.2d 827. Here, the circuit court's grant of declaratory judgment turned upon its interpretation of an insurance policy, which presents a question of law. *Sustache,* 311 Wis. 2d 548, ¶ 18.

¶ 25. We begin by addressing the application of the four-corners rule. Then, we turn to the relevant policy language to determine whether there is coverage for any alleged liability incurred by Farrar for the damage to Olson's vehicle and trailer home and whether summary and declaratory judgment were properly granted.

¶ 26. In this case, Mt. Morris provided an initial defense for Farrar pursuant to its reservation of rights. It then moved to intervene, bifurcate the coverage issues from the issues related to liability and damages, and stay all proceedings on liability and damages. Mt. Morris sought a no-coverage declaration. We are asked to provide guidance on whether the four-corners rule would prevent consideration of extrinsic evidence in this coverage dispute. As a threshold matter, we must determine whether the four-corners rule is implicated in this no-coverage inquiry.

¶ 27. To understand the role of the four-corners rule, it is essential to distinguish between the insurer's duty to indemnify and its duty to defend. Contracts for insurance typically impose two main duties: the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages. *Johnson Controls, Inc. v. London Mkt.,* 2010 WI 52, ¶ 28, 325 Wis. 2d 176, 784 N.W.2d 579.

¶ 28. The duty to indemnify is fairly straightforward. An insurer must indemnify an insured against losses that are covered under the terms of the policy.

¶ 29. The insurer's duty to defend is more complicated because it is broader than its duty to indemnify. "The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim." *Elliott v. Donahue,* 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992). "The insurer is under an obligation to

defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *Grieb v. Citizens Cas. Co.,* 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967). Accordingly, an insurer must defend all suits where there would be coverage if the allegations were proven, even if the allegations are "utterly specious." *Smith v. Katz,* 226 Wis. 2d 798, 807, 595 N.W.2d 345 (1999). "If there is any doubt about the duty to defend, it must be resolved in favor of the insured."[5] *Elliott,* 169 Wis. 2d at 321.

¶ 30. Wisconsin policy is clear. If the allegations in the complaint, construed liberally, appear to give rise to coverage, insurers are required to provide a defense until the final resolution of the coverage question by a court. Insurers who refuse to provide an initial defense do so at their own peril. *Id.; see also* 2 Arnold Anderson, *Wisconsin Insurance Law* § 7.41 (6th ed. 2011).

¶ 31. The four-corners rule furthers this policy. In *Sustache,* we explained the four-corners rule as follows: "[W]hen a complaint alleges facts that, if proven, would constitute a covered claim, the insurer must appoint defense counsel for its insured without looking beyond the complaint's four corners. That is the substance of the four-corners rule." 311 Wis. 2d 548, ¶ 27.

¶ 32. The four-corners rule "ensure[s] that insurers do not frustrate the expectations of their insureds by [prematurely] resolving the coverage issue in their

---

[5] When conducting a duty to defend analysis, "the allegations in the complaint are construed liberally," "all reasonable inferences in the allegations of a complaint" must be assumed, and "any doubt regarding the duty to defend [must be resolved] in favor of the insured." *Fireman's Fund Ins. Co. v. Bradley Corp.,* 2003 WI 33, ¶ 20, 261 Wis. 2d 4, 660 N.W.2d 666.

own favor[.]" *Baumann v. Elliott,* 2005 WI App 186, ¶ 10, 286 Wis. 2d 667, 704 N.W.2d 361. As the Seventh Circuit has noted, without the four-corners rule, "the duty to defend would often be empty. The insurance company could refuse to defend in the hope that the facts as they emerged in the litigation that its insured had asked it to defend would reveal that there was no coverage." *Guaranty Bank v. Chubb Corp.,* 538 F.3d 587, 593 (7th Cir. 2008) (discussing Wisconsin law).

¶ 33. Accordingly, the four-corners rule is implicated when the insurer makes an initial determination about whether it will defend its insured. The four-corners rule is also implicated in situations where it is asserted that the insurer breached the contract by wrongly refusing to provide a defense.[6]

¶ 34. However, the purpose of the four-corners rule has been served once the insurer has elected to provide a defense pending a final determination on coverage. At that point, the insurer has protected its insured by providing a defense. The insurer has also protected itself from liability for a breach of contract. The four-corners rule is not further implicated, and the court proceeds to a determination of coverage.

¶ 35. "Both the insurer and the insured have the right to have the court resolve the issue of coverage separate from any trial on liability." *Sustache,* 311 Wis. 2d 548, ¶ 26. At a coverage trial, extrinsic evidence

---

[6] *See, e.g., Newhouse v. Citizens Security Mut. Ins. Co.,* 176 Wis. 2d 824, 501 N.W.2d 1 (1993) (evaluating the four-corners of the complaint to determine whether an insurer breached its duty to defend).

may be introduced "where appropriate to the resolution of the coverage question." *Lucterhand v. Granite Microsystems,* 564 F.3d 809, 812 n.2 (7th Cir. 2009) (discussing the application of *Sustache* under Wisconsin law).

¶ 36. Sometimes, the question of coverage is purely a matter of insurance policy interpretation, and it can be decided by a court as a matter of law in accordance with the well-established rules for interpreting insurance policies. However, at other times, the facts bearing on coverage are disputed, and coverage cannot be determined until these factual disputes are resolved in the circuit court.[7]

¶ 37. The right to a determination on coverage in the circuit court would often be empty if, as Mt. Morris suggests, the court's inquiry were limited by the four-corners rule. If the coverage determination were con-

---

[7] *See Mowry v. Badger State Mut. Cas. Co.,* 129 Wis. 2d 496, 385 N.W.2d 171 (1986) (involving a coverage trial on whether the insured owned the vehicle); *Elliott v. Donahue,* 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992) (discussing a coverage trial on permissive use); *Siebert v. Wisconsin Am. Mut. Ins. Co.,* 2011 WI 35, ¶ 16, 333 Wis. 2d 546, 797 N.W.2d 484 (discussing a coverage trial on permissive use); *Gross v. Joecks,* 72 Wis. 2d 583, 241 N.W.2d 727 (1976) (reviewing a coverage trial to the court on permissive use); *Neff v. Pierzina,* 2001 WI 95, ¶ 27, 245 Wis. 2d 285, 629 N.W.2d 177 (discussing a coverage trial on whether the insured provided timely notice of a claim). *See also Kenefick v. Hitchcock,* 187 Wis. 2d 218, 522 N.W.2d 261 (Ct. App. 1994) (concluding that summary judgment on the coverage question was properly granted because there was no evidence suggesting that the property damage occurred within the policy period); *Barber v. Nylund,* 158 Wis. 2d 192, 461 N.W.2d 809 (Ct. App. 1990) (discussing the circuit court's grant of summary judgment during the coverage phase because the facts showed that the vehicle involved in the accident was not owned by the insured and therefore not a replacement vehicle).

strained by the four-corners rule, then what evidence could ever be presented at a coverage trial?

¶ 38. Accordingly, in *Sustache,* we held: "Where the insurer has provided a defense to its insured, a party has provided extrinsic evidence to the court [that is relevant to the question of coverage], and the court has focused in a coverage hearing on whether the insured's policy provides coverage for the plaintiff's claim, it cannot be said that the proceedings are governed by the four-corners rule. The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case." 311 Wis. 2d 548, ¶ 29 (emphasis omitted).

¶ 39. Mt. Morris appointed counsel for Farrar's defense until the question of coverage could be finally resolved by the court. To that end, Mt. Morris filed a motion for summary and declaratory judgment, requesting that the court provide a final determination on coverage. If extrinsic evidence is relevant to that inquiry, it is admissible.

### IV

¶ 40. We turn to determining whether there is coverage for this accident. There is an established framework for determining whether coverage is provided under the terms of an insurance policy.

¶ 41. First, the court examines whether the policy's insuring agreement makes an initial grant of coverage. *Varda v. Acuity,* 2005 WI App 167, ¶ 9, 284 Wis. 2d 552, 702 N.W.2d 65. If the initial grant of coverage is triggered by the claim, the court examines the various exclusions to determine whether any exclusion precludes coverage. *Id.* If so, the court then deter-

mines whether there is an exception to the exclusion which reinstates coverage. *Sass v. Acuity,* 2009 WI App 32, ¶ 5, 316 Wis. 2d 752, 765 N.W.2d 582.

¶ 42. "Of primary importance is that the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1 (1994). If a word or phrase is susceptible to more than one reasonable interpretation, it is ambiguous. *Folkman v. Quamme,* 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage." *Froedtert Mem'l Lutheran Hosp. v. Nat'l States Ins. Co.,* 2009 WI 33, ¶ 43, 317 Wis. 2d 54, 765 N.W.2d 251.

¶ 43. Here, the insuring agreement provides that Mt. Morris will pay "all sums for which an 'insured' is liable by law because of . . . 'property damage' caused by an 'occurrence' to which this coverage applies." However, the policy excludes " 'property damage' which results from the ownership, operation, maintenance, use, [or] occupancy . . . of 'motorized vehicles' " or trailers unless "coverage is provided by an Incidental Motorized Vehicle . . . Coverage." The parties agree that the tractor falls within the definition of a "motorized vehicle,"[8] and that there is no coverage for the property

---

[8] "Motorized vehicle" is defined in the policy as "a self-propelled land or amphibious vehicle regardless of method of surface contact."

233

damage unless the exception to the motorized vehicle exclusion, found in the Incidental Motorized Vehicle Coverage, applies to reinstate coverage.

¶ 44. In relevant part, the Incidental Motorized Vehicle Coverage provides that Mt. Morris will pay for property damage that "results from" a "mobile home trailer," unless the mobile home trailer was "towed by, or attached to a 'motor vehicle' ":

> 5. Motorized Vehicles - "We" pay for the "bodily injury" or the "property damage" which:
>
> . . . .
>
> b. results from:
>
> . . . .
>
> 2) a utility, boat, camp, or mobile home trailer. However, this coverage does not apply to "bodily injury" or "property damage" resulting from a trailer which:
>
> a) is carried on, towed by, or attached to a "motor vehicle" . . . .

¶ 45. The parties agree that Olson's trailer home was towed by Farrar's tractor, but disagree whether the tractor falls within the definition of a "motor vehicle." The policy defines "motor vehicle" as follows: " 'Motor vehicle' means a 'motorized vehicle,' . . . and all attached machinery or equipment if: a. it is subject to 'motor vehicle' registration; or b. it is designed for use on public roads."

¶ 46. The parties agree that Farrar's tractor was not subject to motor vehicle registration. They dispute whether the tractor was designed for use on public roads.

¶ 47. The final exclusion relevant to our analysis is the "used by or in the care of" exclusion. It is found in paragraph 2.d. of the policy's exclusion section, and it

provides: "Coverage L does not apply to: . . . damage to property that is rented to, occupied by, used by, or in the care of an 'insured' . . . ."

¶ 48. Considering together the relevant policy language, three conditions must be met for there to be coverage for the damage to Olson's trailer home and vehicle: (A) the property damage must "result[] from" a mobile home trailer; (B) the mobile home trailer must not be attached to a "motor vehicle" (meaning a motorized vehicle that was "designed for use on public roads"); and (C) the damaged property must not be "occupied by, used by, or in the care of" Farrar. We address each of these conditions in turn.

## A

¶ 49. `As noted above, the first condition that must be met is that the property damage must "result[] from" the mobile home trailer. Accordingly, if the property damage resulted from both the tractor and the trailer home, there is coverage. However, if the property damage resulted exclusively from the tractor and did not result from the trailer home, there is no coverage under the terms of the policy.

¶ 50. The phrase "results from" is not defined in the policy. To determine its meaning, we resort to the well-established canons of insurance policy interpretation.

¶ 51. Mt. Morris contends that the phrase "results from" is unambiguous, encompassing only "the cause of the accident or damage." Mt. Morris argues that the property damage "did not result from a mobile home trailer, but rather the failure of the tractor to pull the trailer up a hill." It asserts that the stalling of the tractor was the cause of the property damage.

235

¶ 52. By contrast, Farrar asserts that the phrase "results from" is broad enough to include any factor that was a contributing cause of the property damage. Here, he contends, the property damage was a direct result of the trailer home crashing into Olson's truck. Further, Farrar argues that the weight of the trailer home was likely a contributing factor—and maybe the only factor —that caused the tractor to stall, causing the trailer home to roll down the hill.

¶ 53. We conclude that the phrase "results from" is susceptible to more than one reasonable construction. Although the phrase could be interpreted narrowly to mean the cause of the property damage, it could just as easily be interpreted to encompass any factor that contributed to the property damage. Because we conclude that the phrase "results from" is ambiguous, we construe it in favor of coverage.[9]

B

¶ 54. We turn next to the definition of "motor vehicle" found in the policy. As stated above, if Farrar's tractor is a "motor vehicle," then the policy does not provide coverage for the property damage. Citing *Snorek v. Boyle,* 18 Wis. 2d 202, 118 N.W.2d 132 (1962), Mt. Morris suggests that the well-established definition of motor vehicle includes farm tractors when they are being used on public roads.

¶ 55. To the extent that Mt. Morris contends that *Snorek* resolves this case, it misreads *Snorek.* That case did not establish a definition of motor vehicle that

[9] At oral argument, a question was asked about whether the damage to the mobile home trailer "result[ed] from" the "mobile home trailer." There was no adequate response to the question, and we do not address it further.

applies uniformly throughout Wisconsin law. On the contrary, in *Snorek,* the court defined the term "motor vehicle" as it was used in the direct action statute, Wis. Stat. §§ 240.30(4) and 260.11(1) (1957).[10] The *Snorek* court acknowledged that there are various statutory definitions of the term "motor vehicle." Some of the statutory definitions include farm tractors, and others do not.[11]

¶ 56. Resolution of whether Farrar's tractor is a "motor vehicle" depends not on how the term "motor vehicle" is defined in various conflicting statutes, but rather, how the term is defined in Mt. Morris's policy. Here, the relevant question is whether the tractor was "designed for use on public roads."

¶ 57. Mt. Morris contends that it is common knowledge in Wisconsin that farm tractors are occasionally used on public roads. It contends that the court of appeals has interpreted the phrase "designed . . . for use on public roads" to mean the "intended use or purpose [of the vehicle] at the time of the accident."

---

[10] *See Hakes v. Paul,* 34 Wis. 2d 209, 213, 148 N.W.2d 699 (1967) ("A farm tractor being operated on a public highway is a motor vehicle for the purpose of the direct-action statutes. . . . This court indicated in *Snorek v. Boyle* . . . that a 'motor vehicle' under secs. 240.30(4) and 260.11(1), Stats., is one which is self-propelled.").

[11] The *Snorek* court cited the Vehicle Code's general definition, "a vehicle which is self-propelled," and concluded that it "unquestionably includes a farm tractor." *Snorek v. Boyle,* 18 Wis. 2d 202, 210, 118 N.W.2d 132 (1962) (citing Wis. Stat. § 340.01(35) (1957)). Nevertheless, the court recognized that other statutory definitions of "motor vehicle," such as the definition found in Wis. Stat. § 344.01(2)(b), expressly exclude farm tractors. *Id.* at 209. That statute provided: " 'Motor vehicle means a self-propelled vehicle . . . except that 'motor vehicle' does not include farm tractors . . . ."

*Schleusner v. IMT Ins. Co.*, 2006 WI App 240, 297 Wis. 2d 368, 724 N.W.2d 430. Mt. Morris asserts that the tractor was being used on a public road at the time of the accident, and therefore, under *Schleusner,* the tractor was designed for use on public roads.[12]

¶ 58. Although we acknowledge that farm tractors may be used on public roads, that fact has little bearing on the proper analysis. The policy definition of motor vehicle does not ask whether the vehicle "is used" on public roads. Rather, the question is for what use the vehicle was "designed." Mt. Morris' interpretation would read the word "designed" out of the policy definition.

¶ 59. The word "designed" is not defined in the policy. To determine its common and ordinary meaning, it is helpful to consult a dictionary. The *American Heritage Dictionary* defines the verb "design" as "to conceive or fashion in the mind; invent" and "to create

[12] The *Schleusner* case does not support Mt. Morris's argument. In that case, a vehicle was initially designed for use on public roads. *Schleusner v. IMT Ins. Co.*, 2006 WI App 240, ¶ 4, 297 Wis. 2d 368, 724 N.W.2d 430. Subsequently, the vehicle was redesigned for use in a demolition derby, making it unsuitable for use on public roads. *Id.*, ¶ 3. The question in *Schleusner* was which design controlled—the initial design or the subsequent redesign.

The court of appeals concluded, in effect, that the subsequent redesign controlled. *Id.*, ¶ 16 ("Vehicles whose intended use or purpose is on public highways as of the time of the accident would be covered, regardless of any previous design for another purpose. On the other hand, there would be no coverage for injuries caused by vehicles retrofitted for use as monster trucks, flowerbeds, or coral reefs."). The court did not hold that a vehicle is designed for a particular use simply because it is actually being used in that manner at the time the accident occurred.

or contrive for a particular purpose or effect." *American Heritage Dictionary of the English Language* 506 (3d ed. 1992). The *Random House Unabridged Dictionary* defines "designed" as "made or done intentionally; intended, planned." *Random House Unabridged Dictionary* 539 (2d ed. 1993).

¶ 60. We conclude that the definition of "motor vehicle" is susceptible to more than one reasonable meaning. The phrase "designed for use" could refer to any conceivable purpose to which a vehicle could be put, and one conceivable purpose for a farm tractor is use on a public road. By contrast, the phrase "designed for use" could refer more narrowly to the particular purpose for which the vehicle is contrived. The particular purpose for which a farm tractor is contrived is use on a farm, not a public road.[13]

¶ 61. Because the definition of "motor vehicle" is susceptible to more than one reasonable interpretation, we construe it in favor of coverage. We conclude that Farrar's tractor is not a "motor vehicle" within the terms of this policy.

C

¶ 62. Finally, we address the exclusion for "damage to property that is rented to, occupied by, used by, or in the care of an 'insured' . . . ." Whether damaged property was "rented to, occupied by, used by, or in the care of an 'insured' " is a factual determination.

¶ 63. In his complaint, Olson seeks to recover damages to his vehicle and his trailer home. It is

---

[13] Similarly, in *Varda v. Acuity,* 2005 WI App 167, ¶ 16, 284 Wis. 2d 552, 702 N.W.2d 65, the court of appeals concluded that "[a] riding lawn mower is not, in the ordinary meaning of the words, . . . designed for use on highways or public roads."

undisputed that Olson's vehicle was not "used by, or in the care of" Farrar at the time of the accident. Accordingly, this exclusion would not preclude coverage for the damage to Olson's vehicle.

¶ 64. The more challenging question is whether this exclusion precludes coverage for the trailer home because it was "used by, or in the care of" Farrar. The court of appeals construed the exclusion to apply only to property that was "in the *sole* possession of the insured[]." *Olson,* 330 Wis. 2d 611, ¶ 27 (emphasis added). It explained: "[T]he undisputed facts show that Olson's mobile home had not been left in Farrar's sole possession. The mobile home was being towed by Farrar, but Olson was also present—he apparently assisted in the moving of the mobile home by following behind Olson's trailer as it towed the mobile home." *Id.*

¶ 65. We are not persuaded by the court of appeals' analysis. Although we construe exclusions narrowly in favor of coverage, the phrase "sole possession" is not found in the exclusion.

¶ 66. Similarly, we are not persuaded by Farrar's assertion that because the exclusion is a variation on a standard "care, custody or control" exclusion, we should look to the purpose of those exclusions when interpreting the language of the policy.[14] However, it is the language of an exclusion, not the asserted purpose underlying the exclusion, that controls our determination of whether the exclusion unambiguously precludes coverage for a claim. *Day v. Allstate Indem. Co.,* 2011 WI 24, ¶ 35, 332 Wis. 2d 571, 798 N.W.2d 199.

---

[14] Farrar asserts that the purpose of "care, custody or control" exclusions is to "prevent a general liability policy from providing first-party benefits to the insured and to insure that the policy covers liability only to injured third parties."

240

¶ 67. Nevertheless, we conclude that at this time, there are unresolved factual issues precluding the entry of summary judgment in either party's favor. As stated above, whether the trailer home was "used by, or in the care of" Farrar is a factual determination. The circuit court did not make any findings of fact, and the relevant facts are scarcely developed.

¶ 68. In the complaint, Olson alleged that Farrar did not have permission to tow the trailer home to its new location. Farrar contests that allegation. In his affidavit, he contended that "the tractor was attached to the mobile home by the man selling the mobile home, Todd Olson, and me. We then proceeded onto the highway where we had a caravan of 3 vehicles involved in moving the mobile home."

¶ 69. Although the factual record has not been well developed, it appears that there may be genuine issues of material fact regarding whether Olson's trailer home was "used by, or in the care of an insured" when it sustained property damage. Because the circuit court granted summary judgment based on its determination that the tractor was a "motor vehicle," it did not need to address this exclusion. Accordingly, we remand to the circuit court to address the exclusion for damage to property "used by, or in the care of an insured."

V

¶ 70. In sum, given that Mt. Morris made an initial determination to appoint counsel for Farrar's defense until the question of coverage could be finally resolved by the court, we determine that the purpose of the four-corners rule has been served. It is not further implicated in this case.

241

¶ 71. Turning to the policy language of the exclusions, we apply a well-settled canon of insurance policy interpretation. We determine that the phrase "results from" is susceptible to more than one reasonable interpretation. We likewise determine that the definition of "motor vehicle" is susceptible to more than one reasonable interpretation. Accordingly, both of these policy provisions are ambiguous, and we construe them in favor of coverage.

¶ 72. Finally, although the factual record has not been well developed, it appears that there may be genuine issues of material fact regarding whether Olson's trailer home was "used by, or in the care of an insured" when it sustained property damage. Because the circuit court did not address this exclusion when it granted judgment, we remand to the circuit court for a determination on this issue. Accordingly, we affirm the court of appeals and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.