PER CURIAM.
¶1 This insurance coverage dispute is before us for the second time. In a previous appeal, we concluded Great West Casualty Company had a duty to defend Penske Truck Leasing Company against a lawsuit filed by James and Carol Klatt. We further concluded factual disputes precluded summary judgment on the issue of whether Great West had a duty to indemnify Penske. We therefore reversed the circuit court's grant of summary judgment to Great West.
¶2 On remand, Penske moved for summary judgment, arguing Great West had breached its duty to defend Penske by failing to provide a defense for Penske during a period when no stay of the underlying proceedings on liability was in place. As damages for the breach, Penske asked the circuit court to award Penske its defense costs and the amount of a settlement it had paid the Klatts while the prior appeal was pending. Great West, in turn, moved for a bench trial on the issue of its duty to indemnify Penske. The circuit court denied Penske's summary judgment motion and held a bench trial on Great West's duty to indemnify. The court ultimately concluded Great West had no duty to indemnify Penske and entered judgment in favor of Great West.
¶3 In the present appeal, Penske argues the circuit court erred because Great West breached its duty to defend Penske. Penske therefore argues it is entitled to recover from Great West the amount of the settlement it paid the Klatts, as well as its defense costs related to both liability and coverage. In response, Great West argues it did not breach its duty to defend Penske because the circuit court never lifted the stay of the underlying proceedings on liability. In the alternative, Great West argues Penske forfeited its right to argue that Great West breached its duty to defend by failing to raise that argument prior to or during Penske's previous appeal.
¶4 We agree with Penske that the stay of the underlying proceedings on liability was implicitly lifted on June 10, 2014, when the circuit court entered a scheduling order setting deadlines for the completion of discovery on the Klatts' claims. Nonetheless, we agree with Great West that Penske forfeited its right to argue that Great West breached its duty to defend by failing to raise that argument before or during Penske's prior appeal. We therefore affirm the circuit court's judgment in favor of Great West.
BACKGROUND
¶5 In our previous opinion, we summarized the relevant factual background as follows:
James Klatt was an employee of Modern Transport, Inc., which rented trucks from Penske. After Modern Transport's drivers completed their routes, they had to return the trucks to a Penske parking lot. By contract, Penske was included as an additional insured on Modern Transport's automobile insurance with Great West.
Klatt [and his wife] sued Penske for unspecified personal injuries following an incident in the Penske lot in January 2012. Klatt's complaint alleged negligence, but it did not explain precisely how he was injured. Rather, it alleged only that Klatt was required to return his truck to a designated portion of Penske's lot and place paperwork regarding the truck in a designated drop box in the lot, and that his injuries resulted from "large accumulations of ice" in the lot.
Klatt v. Penske Truck Leasing Co. , No. 2014AP2854, unpublished slip op. ¶¶2-3 (WI App May 17, 2016) (footnote omitted).
¶6 Penske answered the Klatts' complaint in January 2013 and tendered defense of the complaint to Great West the following month. Great West rejected Penske's tender of defense, asserting the additional insured endorsement in its policy was "for auto liability only and [was] therefore not applicable to the allegations made in the [Klatts'] complaint." Penske subsequently filed a third-party summons and complaint against Great West, asserting Great West was required to defend Penske against the Klatts' claims and to indemnify Penske, up to the policy limits, for any sums Penske was ultimately required to pay the Klatts.
¶7 Great West answered Penske's third-party complaint on September 16, 2013, denying that its policy provided coverage for the claims alleged in the Klatts' complaint. Great West's answer also included a counterclaim, which sought a declaratory judgment that Great West "owe[d] no duty to defend or indemnify Penske." On the same day, Great West moved to sever Penske's third-party complaint from the Klatts' underlying complaint or, alternatively, "to stay the proceedings in the underlying action until the issues raised in the third-party complaint [were] resolved." The circuit court granted Great West's motion for a stay on January 17, 2014, and ordered "an expedited settling of the coverage dispute."
¶8 Great West then moved for summary judgment on Penske's third-party complaint and on its own counterclaim for declaratory judgment. Great West argued its policy did not "afford coverage to Penske" because the Klatts' complaint did not "contain any allegations that potentially suggest[ed] that the accident resulted from the ownership, maintenance or use of a covered auto." The circuit court denied Great West's summary judgment motion during a hearing on June 9, 2014. The court concluded, based on the allegations in the Klatts' complaint, that it was "possible" Klatt's injury was related to his use of a covered vehicle. However, the court stated it would "leave open the time for summary judgment and would rehear similar arguments in the future" after additional discovery had taken place.
¶9 The circuit court conducted a scheduling conference during the remainder of the June 9, 2014 hearing. During the scheduling conference, the Klatts' attorney raised the prospect of lifting the stay of proceedings on liability, stating, "[M]y clients were happy to have everything stayed up to this point so that [the court] could render [its] decision, but I think in fairness to them, we need to move forward with the schedule and move the case to mediation or trial as the case may be." In response, Penske's attorney suggested that the circuit court do "two things":
We give [counsel for Great West] a chance to digest the court's ruling and confer with their client and then perhaps touch base with me as to what we do with respect to going forward in terms of the defense and things like that. In the meantime, I think there's no reason why we can't get a schedule in place for the underlying action to move forward. And we can also-we can also set a date, to the extent that [counsel for Great West] and I can't kind of work this out between ourselves, we can set up a date by which time I would need to file a motion on the defense issue.
¶10 The circuit court then proceeded to set various deadlines for the completion of discovery in the underlying liability case. The court began by setting a deadline of July 18, 2014, for the Klatts to name expert witnesses, and it then suggested a deadline of August 15, 2014, for Penske to name experts. At that point, one of Great West's attorneys interjected, stating:
Let me just step in here. You know, normally in this kind of situation, and given that we may be in the position of having to undertake the defense in this case, the normal span of time between the plaintiff's experts and defense experts in this kind of a case would be, I would think, at least 90 days. So I would ask for 90 days before the defense experts would be required to be disclosed.
After the Klatts' attorney stated she had no objection to a ninety-day deadline, the circuit court set a deadline of October 17, 2014, for Penske to name experts.
¶11 The circuit court then inquired as to what other deadlines the parties wanted the court to set, at which point Penske's attorney stated the parties "may wish to set some time for the deposition of experts, as well." Great West's attorney responded, "[W]e can accomplish all of that by the close of discovery. So if we set a date for closing discovery, that will take care of that." Great West's attorney also suggested that the court set a date for the parties to inform the court whether they intended to engage in mediation. The court and the parties proceeded to discuss various other deadlines for discovery on the Klatts' claims, as well as deadlines for further motions by Penske and Great West regarding coverage and the duty to defend. At no point during the June 9, 2014 hearing did Great West's attorneys object to the circuit court setting deadlines for discovery on the Klatts' claims. On June 10, 2014, the court entered a written order denying Great West's summary judgment motion and memorializing the deadlines established during the June 9, 2014 hearing.
¶12 Consistent with the circuit court's June 10, 2014 order, Great West filed a "Renewed Motion for Summary Judgment" on July 14, 2014, arguing additional evidence clarified the allegations in the Klatts' complaint and conclusively showed that the accident did not involve the use of a covered vehicle. Penske then filed its own summary judgment motion on August 15, 2014, seeking an order "declaring that, as a matter of law, Great West has a duty to defend Penske with respect to [the Klatts'] claims." Penske argued the court could not look beyond the allegations in the Klatts' complaint when determining whether Great West had a duty to defend, and based on those allegations, Great West's policy arguably covered the Klatts' claims.
¶13 The circuit court granted Great West's summary judgment motion during a hearing on October 20, 2014. The court reasoned that, given the extrinsic evidence Great West had submitted in support of its motion, "[n]o properly instructed, reasonable jury could find ... that the injury was related to use of the truck." The court subsequently entered a written order granting Great West summary judgment and denying Penske's summary judgment motion regarding the duty to defend. Penske appealed that order. However, while Penske's appeal was pending, it reached a settlement with the Klatts. A stipulation and order for dismissal of the Klatts' claims was filed in the circuit court on May 12, 2015.
¶14 Just over one year later, on May 17, 2016, this court issued an opinion reversing the circuit court's grant of summary judgment to Great West. See Klatt , No. 2014AP2854, ¶1. We agreed with Penske that Great West was not entitled to summary judgment on the duty-to-defend issue because "the four-corners rule applies to duty-to-defend inquiries and there was possible coverage under that rule." Id. , ¶15. We also concluded the circuit court had erred by granting Great West summary judgment on the duty to indemnify because there was a genuine issue of material fact as to Klatt's location at the time of his injury. Id. , ¶¶15, 21-25.
¶15 On remand, Penske again moved for summary judgment, seeking an order "awarding it reimbursement from Great West of Penske's defense costs and settlement payment to the Klatts." Penske argued the court of appeals had held "that Great West wrongly refused to defend Penske." Penske further argued insurers that improperly refuse to defend "are responsible for reimbursing not only the costs incurred to defend the underlying action, but also any amount paid to settle the action."
¶16 Great West opposed Penske's summary judgment motion and moved the circuit court to hold a bench trial on the sole issue of Klatt's location at the time of his injury. Great West argued the court of appeals had concluded there was a disputed issue of material fact as to that issue, and a bench trial was therefore necessary to resolve the factual dispute. Great West further asserted the court of appeals "made no declaration or finding that Great West breached its duty to defend Penske," and an insurer only has a duty to defend "once coverage is decided." Great West contended that, "where the insurer requests a bifurcated trial on the issues of coverage and liability and moves to stay the proceedings until the issue of coverage is resolved ... there is no interim obligation to provide a defense" and the insurer does not breach its duty to defend by failing to do so. Because Great West had requested and obtained a stay of proceedings on liability, Great West argued it was "improper for Penske to seek reimbursement" of its defense and indemnity costs if Great West's policy did not cover the Klatts' claims.
¶17 The circuit court held a hearing on Penske's summary judgment motion on October 18, 2016. During that hearing, the parties disputed whether the circuit court had ever lifted the stay of proceedings on liability. The court ultimately made a factual finding that the stay was not lifted. The court therefore concluded Great West "followed the Supreme Court procedure for bifurcation of coverage issues." The court further stated Great West had reasonably relied on the court's prior decision, which was later reversed on appeal, that Great West's policy did not cover the Klatts' claims. The court therefore concluded Great West had not "unreasonably or improperly" breached its duty to defend Penske.
¶18 In August 2017, the circuit court held a bench trial regarding Klatt's location at the time of his injury. Based on the evidence presented during the bench trial, the court found that Klatt's injury occurred outside Penske's truck and was therefore not related to his use of the truck. Accordingly, the court concluded Great West had no duty to defend or indemnify Penske in connection with the Klatts' claims. The court therefore dismissed Penske's third-party claim against Great West and entered judgment in favor of Great West on its counterclaim for declaratory judgment. Penske now appeals.
DISCUSSION
¶19 "Contracts for insurance typically impose two main duties: the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages." Olson v. Farrar , 2012 WI 3, ¶27, 338 Wis. 2d 215, 809 N.W.2d 1. The duty to indemnify requires an insurer to "indemnify an insured against losses that are covered under the terms of the policy." Id. , ¶28. The duty to defend, however, is "broader" and "more complicated" than the duty to indemnify. Id. , ¶29. It depends on the "nature" of the claim against the insured, rather than the claim's "merits." Id. Thus, "[i]f the allegations in the [plaintiff's] complaint, construed liberally, appear to give rise to coverage, insurers are required to provide a defense until the final resolution of the coverage question by a court." Id. , ¶30.
¶20 An insurer's denial of coverage does not constitute a breach of the duty to defend where the issue of coverage is fairly debatable, as long as the insurer provides coverage and a defense once coverage is established. Newhouse by Skow v. Citizens Sec. Mut. Ins. Co. , 176 Wis. 2d 824, 836, 501 N.W.2d 1 (1993). "However, when coverage is not determined before a liability trial, the insurer must provide a defense for its insured with regard to liability and damages." Id. When coverage is disputed, the "proper procedure" for an insurance company to follow "is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." Id. "When this procedure is followed, the insurance company runs no risk of breaching its duty to defend." Id.
¶21 In Penske's prior appeal, we concluded Great West had a duty to defend Penske because, based on the allegations in the Klatts' complaint, it was "possible" Great West's policy covered the Klatts' claims against Penske. See Klatt , No. 2014AP2854, ¶¶15, 19. Penske now argues Great West breached its duty to defend by failing to provide a defense for Penske before the issue of Great West's duty to indemnify was resolved, during a period in which the underlying proceedings on liability were not stayed. While Penske concedes the circuit court entered an order staying proceedings on liability in January 2014, Penske argues the court's June 10, 2014 scheduling order effectively lifted the stay by setting discovery deadlines regarding the Klatts' claims. In response, Great West argues the circuit court never lifted the stay. The circuit court agreed with Great West, making a factual finding during the October 18, 2016 hearing that the stay "ha[d] not been lifted."
¶22 We agree with Penske that the June 10, 2014 scheduling order effectively lifted the stay of proceedings on liability, and the circuit court's factual finding to the contrary is clearly erroneous. See WIS. STAT. § 805.17(2) (2015-16)[1] (stating a circuit court's factual findings "shall not be set aside unless clearly erroneous"). As noted above, during the June 9, 2014 scheduling conference, the Klatts' attorney acknowledged that the stay was in effect but then asked the circuit court to "get a schedule in place" so that the parties could "move forward" with the underlying action. After a discussion with the parties, the court set multiple deadlines for discovery in the underlying liability action, specifically: (1) deadlines for both the Klatts and Penske to name experts; (2) a deadline for the Klatts to submit a vocational evaluation; (3) deadlines for Penske to complete an independent medical examination and vocational evaluation; and (4) a deadline for the closing of discovery. The court then entered a scheduling order memorializing these deadlines. Although the order did not expressly state that the court was lifting the stay of proceedings on liability, by permitting discovery to proceed in the underlying liability action, the order clearly had that effect.
¶23 Great West relies on WIS. STAT. § 807.03 to support its claim that the stay was not lifted. That statute provides, in relevant part, "An order made upon notice shall not be modified or vacated except by the court upon notice ." Id. (emphasis added). Great West contends it had no notice that the circuit court's prior order imposing the stay had been modified or vacated because no party filed a motion to lift the stay and the circuit court never "issued an order providing notice to the parties that it was modifying the stay order."
¶24 Great West's contention that it had no notice the stay had been lifted is meritless. Once again, we observe that the Klatts' attorney specifically asked the circuit court during the June 9, 2014 hearing to set deadlines so that the parties could "move forward" with proceedings on liability. The parties and the court then engaged in an extensive discussion about setting discovery deadlines in the underlying action. At no point during that discussion did either of Great West's attorneys object to the court setting those deadlines. In fact, one of Great West's attorneys proposed that the court set a specific deadline for Penske to name experts, and he later suggested that the court set a date "for closing discovery." The court accepted those suggestions and ultimately incorporated them into its June 10, 2014 order, which also memorialized the other discovery deadlines that were established during the June 9 hearing. Taken together, the June 9 proceedings and the June 10 order gave Great West clear notice that the stay of proceedings on liability was no longer in place.
¶25 Given that the stay was, in fact, lifted as of June 10, 2014, Penske argues Great West breached its duty to defend by failing to provide a defense for Penske from that point onward. In response, Great West argues Penske forfeited its right to argue that Great West breached its duty to defend by failing to raise that argument either before or during Penske's prior appeal. Specifically, Great West argues Penske should have raised an argument regarding breach in its August 15, 2014 summary judgment motion concerning the existence of Great West's duty to defend, which Penske filed after the circuit court lifted the stay of proceedings on liability.
¶26 In reply, Penske argues it could not have raised any issue regarding a breach of the duty to defend in its August 15, 2014 summary judgment motion because, at the time it filed that motion, it "had not yet had to defend itself." Penske asserts that all the discovery deadlines the June 10, 2014 scheduling order imposed on Penske elapsed after Penske filed its summary judgment motion. Penske therefore asserts that, at the time it filed that motion, the breach issue was not "ripe to present ... to the circuit court."
¶27 An issue is not "ripe" for adjudication when its resolution depends on hypothetical or future facts. Tammi v. Porsche Cars N. Am., Inc. , 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783. Stated differently, an issue is not ripe if it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Texas v. U.S. , 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co. , 473 U.S. 568, 580-81 (1985) ). We independently review whether an issue is ripe for adjudication. Olson v. Town of Cottage Grove , 2008 WI 51, ¶¶37-38, 309 Wis. 2d 365, 749 N.W.2d 211.
¶28 Here, the record belies Penske's assertion that the breach issue was not ripe when it moved for summary judgment on August 15, 2014, because it "had not yet had to defend itself" at that time. In support of a subsequent motion, Penske submitted billing records to the circuit court documenting its defense costs. Those records clearly show that Penske incurred defense costs related to the liability portion of the case between June 10, 2014-the date the stay of proceedings on liability was lifted-and August 15, 2014-the date Penske filed its summary judgment motion.
¶29 For instance, the billing records contain a July 17, 2014 charge for "Analysis and review of Plaintiffs Amended Notice of Experts. Email to client re same. Email to Wickstrom re deposition of Berke."[2] The billing records also contain a July 21, 2014 charge for "Email from client re authorization to depose Berke," and a July 29, 2014 charge for "Email from Wickstrom re Berke deposition. Email to client re plaintiff request for lighting tests. Email from client re same. Email to Fedie re same." These (and other) charges during the relevant time period indisputably pertain to Penske's defense of the underlying liability action, rather than to Penske's coverage dispute with Great West. Penske concedes as much in its supplemental brief.
¶30 We therefore reject Penske's claim that it could not have raised any argument regarding breach of the duty to defend in its August 15, 2014 summary judgment motion. As of that date: (1) the circuit court had denied Great West's summary judgment motion regarding the duty to defend, concluding the allegations in the Klatts' complaint gave rise to possible coverage; (2) the court had lifted the stay of proceedings on liability; and (3) Penske had incurred costs to defend itself against the Klatts' claims and was therefore damaged by the breach. Under Penske's own theory of insurance coverage liability, Great West's breach of the duty to defend had therefore already occurred by the time Penske filed its August 15, 2014 summary judgment motion.
¶31 Accordingly, Penske should have raised an argument regarding breach in its August 15, 2014 motion. Had it done so, this court could have considered that argument in Penske's prior appeal. However, Penske did not raise its breach argument in either the August 15, 2014 motion or in its previous appeal. Long ago, our supreme court held that questions of law that could have been raised in a prior appeal, "whether thought of by counsel and argued or not," are "foreclosed" by an appellate court's prior decision. Lutien v. City of Kewaunee , 151 Wis. 607, 609, 139 N.W. 312 (1913). The court has also explained that, in the interest of preventing lawsuits from being "strung along by successive appeals for years," an appellate litigant "is concluded by the mandate of this court as to all matters actually presented or which might consistently with legal rules have been presented to this court upon appeal." Monahan v. Fairbanks-Morse Mfg. Co. , 150 Wis. 512, 515-16, 137 N.W. 748 (1912). We therefore hold that, by failing to raise its argument regarding Great West's breach of the duty to defend in its August 15, 2014 summary judgment motion and in its previous appeal, Penske has forfeited its right to raise that argument in the instant appeal.
¶32 In its supplemental brief, Penske argues for three reasons that it has not forfeited its argument regarding breach. First, Penske argues that, after the circuit court denied Great West's summary judgment motion on the duty to defend and lifted the stay of proceedings on liability, counsel for Great West equivocated as to whether Great West would, in fact, assume Penske's defense. Penske therefore asserts it had no grounds to argue breach in its August 15, 2014 motion because it was not yet clear at that time whether Great West would honor its duty to defend Penske. By August 15, however, the breach had already occurred. As of that date, the stay of proceedings on liability had been lifted, and Penske had incurred costs to defend itself against the Klatts' claims. Penske incurred those costs precisely because Great West had not yet agreed to provide it with a defense. The fact that counsel for Great West equivocated rather than refusing to provide a defense outright is immaterial to the accrual of Penske's claim. Once the stay was lifted and Great West equivocated, causing Penske to incur defense costs, the duty to defend was breached.
¶33 Second, Penske argues it has not forfeited its argument regarding breach because the costs it incurred to defend itself against the Klatts' claims between June 10 and August 15, 2014, were minimal. We are not persuaded by this argument. Although the defense costs Penske incurred during the relevant time period were not extensive, the billing entries cited above clearly show that, as a result of Great West's failure to provide a defense, Penske was required to expend its own resources to defend itself against the Klatts' claims. Moreover, by August 15, 2014, Penske was entitled to the same type of damages for Great West's breach of its duty to defend as it now seeks on appeal, regardless of whether the full amount of the damages was known at the time of the breach. Great West therefore breached its duty to defend, and Penske should have raised an argument regarding breach in its August 15, 2014 summary judgment motion and in the subsequent appeal.
¶34 Third, Penske argues it "took no action unambiguously demonstrating a knowing relinquishment of a right to pursue damages for a breach." In making this argument, however, Penske fails to apprehend the difference between waiver and forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." State v. Ndina , 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting United States v. Olano , 507 U.S. 725, 733 (1993) ). In this case, we have concluded that Penske forfeited its right to raise an argument regarding breach of the duty to defend by failing to timely raise that argument. That conclusion does not require any evidence of knowing or intentional relinquishment by Penske.
¶35 In closing, we note that the facts surrounding our conclusion that Penske forfeited its right to raise an argument regarding Great West's breach of its duty to defend are unusual. Such forfeiture will not occur in cases where coverage and the duty to defend are at issue and the parties follow our supreme court's procedure for bifurcation of coverage issues. It is only because the court and the parties did not follow that procedure, and Penske accrued damages as a result of Great West's breach of its duty to defend prior to its first appeal, that Penske forfeits its right to claim a breach at this time.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Attorney Beverly Wickstrom was the Klatts' attorney, and Lanny Berke was one of the Klatts' expert witnesses.