# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2293**

Cir. Ct. No. **2022CV935**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

EDYTA CULLEN INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR, ESTATE OF RICHARD LEE CULLEN II AND AUDREY CULLEN, MINOR DAUGHTER BY GAL CHRISTOPHER L. STROHBEHN,

    PLAINTIFFS-APPELLANTS,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    INVOLUNTARY-PLAINTIFF,

  V.

PAUL FRANECKI, ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY,

    DEFENDANTS,

ERIE INSURANCE EXCHANGE,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed.*

Before Neubauer, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Edyta Cullen, individually and as special administrator; the Estate of Richard Lee Cullen II; and Audrey Cullen, Edyta and Richard's minor daughter, by guardian ad litem Christopher L. Strohbehn (together, the Cullens) appeal from an order granting Erie Insurance Exchange's (Erie) motion for declaratory judgment and declaring that there is no uninsured or underinsured motorist (UM/UIM) coverage available under Erie's policy for claims the Cullens asserted against Paul Franecki.  The Cullens contend that the circuit court erred in determining that there was no UM/UIM coverage available under Erie's policy based on its conclusion that the jet boat Franecki was operating when it collided with Richard Cullen was not an "uninsured motor vehicle" or an "underinsured motor vehicle" under Erie's policy.  Because the court correctly determined that the boat is not an "uninsured motor vehicle" or an "underinsured motor vehicle" under the policy, there is no UM/UIM coverage available under the policy.  We therefore affirm.

¶2    According to the Cullens' complaint, on August 22, 2020, Richard Cullen was riding a jet ski on Tichigan Lake in Racine County when he collided with "a 2000 Eurolife Inc. Jet Boat" operated by Franecki.  Richard died as a result of injuries sustained in the collision.  Audrey heard the collision from a nearby lake house and observed the immediate aftermath and rescue efforts.

¶3     At the time of the accident, the Cullens were insured by Erie under a policy of automobile insurance. The policy included an endorsement that provided UM/UIM coverage. The endorsement's insuring agreement states in relevant part as follows:

> **"We"** will pay for damages for bodily injury that **"anyone we protect"** or the legal representative of **"anyone we protect"** is legally entitled to recover from the owner or operator of an **"uninsured motor vehicle."**
>
> If Underinsured Motorists Coverage is indicated on the **"Declarations," "we"** will pay damages for bodily injury that **"anyone we protect"** or the legal representative of **"anyone we protect"** is legally entitled to recover from the owner or operator of an **"underinsured motor vehicle."**
>
> Damages must:
>
> 1. result from a motor vehicle accident arising out of the ownership, maintenance or use of the **"uninsured motor vehicle"** or **"underinsured motor vehicle"** as a **"motor vehicle[.]"**

The endorsement defines the terms "uninsured motor vehicle" and "underinsured motor vehicle." These definitions state in relevant part that neither term includes a motor vehicle "designed for use mainly off public roads while not on public roads."[1]

¶4     Following the accident, the Cullens filed suit against Franecki and several insurance companies, including Erie, alleging that Franecki's negligence directly and proximately caused Richard's death and Audrey's severe emotional distress resulting from her observations on the day of the accident. Erie filed a

---

[1] Elsewhere in the policy, a "[m]otor vehicle" is defined to include "any vehicle that is self-propelled and is required to be registered under the laws of the state in which **'you'** reside at the time this policy is issued."

motion seeking a declaration that the UM/UIM endorsement did not cover any damages that might be awarded against Franecki because the boat he was driving was not an "uninsured motor vehicle" or an "underinsured motor vehicle" because it was "designed for use mainly off public roads while not on public roads." The circuit court agreed and granted Erie's motion.

¶5 "Whether to grant a declaratory judgment is addressed to the circuit court's discretion." *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶6, 280 Wis. 2d 624, 695 N.W.2d 883. However, when the exercise of that discretion concerns a question of law, such as the interpretation of an insurance policy, appellate review is de novo. *Id.*

¶6 Our goal in interpreting an insurance policy is "to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857. "We interpret insurance policy language according to its plain and ordinary meaning as understood by a reasonable insured." *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶18, 360 Wis. 2d 129, 857 N.W.2d 136. In construing policy language, we cannot "rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Bankert v. Threshermen's Mut. Ins. Co.*, 105 Wis. 2d 438, 444-45, 313 N.W.2d 854 (Ct. App. 1981).

¶7 Interpretation of an insurance policy to determine whether coverage exists follows a three-step process. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. First, we look to "the facts of the insured's claim to [ascertain] whether the policy's insuring agreement makes an initial grant of coverage." *Id.* If it is clear there is no initial grant of coverage, the analysis stops there. *Id.* If we determine there is an initial grant of

coverage, next we look to the exclusions of coverage to see if any of them preclude the insured's claim. *Id.* Finally, if we determine that an exclusion applies to the insured's claim, we will look at any exceptions to the exclusion to see if they reinstate coverage. *Id.*

¶8      Here, our analysis begins and ends at the first step. The insuring agreement of the UM/UIM endorsement affords coverage "for bodily injury [to] **'anyone we protect'**" if they are "legally entitled to recover from the owner or operator of an **'uninsured motor vehicle'**" or an "'**underinsured motor vehicle.'**" The damages suffered by the insured must "result from a motor vehicle accident arising out of the ownership, maintenance or use of the **'uninsured motor vehicle'** or **'underinsured motor vehicle**.'" The endorsement defines the terms "uninsured motor vehicle" or "underinsured motor vehicle," but those definitions specifically exclude **"motor vehicles"** that are "designed for use mainly off public roads while not on public roads."

¶9      We agree with the circuit court that the boat involved in the accident in this case is not an "uninsured motor vehicle" or an "underinsured motor vehicle" under the UM/UIM endorsement. The relevant language in the definitions of those terms incorporates two conditions: if the vehicle at issue is "designed for use mainly off public roads" and its use at the time of the accident is "not on public roads," then it is not an uninsured or underinsured motor vehicle. The record here indicates that the boat Franecki was driving at the time of the collision with Cullen satisfies both conditions: it was designed for use mainly on bodies of water, not on public roads, and it was being driven at the time of the accident on Tichigan Lake, not a public road. Accordingly, the Cullens' claimed damages do not "result from a motor vehicle accident arising out of the ownership, maintenance or use of the **'uninsured motor vehicle'** or **'underinsured motor**

5

**vehicle**.'" Thus, the endorsement's insuring agreement does not provide an initial grant of coverage for the Cullens' claimed damages.

¶10 We examined the same definitional language and reached a similar conclusion in *Schleusner v. IMT Insurance Co.*, 2006 WI App 240, 297 Wis. 2d 368, 724 N.W.2d 430. In *Schleusner*, the plaintiff was struck by a modified Chrysler vehicle while he was working as a flagman at a demolition derby. *Id.*, ¶¶2-3. The driver's modified vehicle could not be driven on public roadways, was never operated on the road, and was never registered for highway use during the driver's ownership of it. *Id.*, ¶3. When Schleusner sought coverage under his UM policy, IMT argued coverage was barred because the policy stated that the term "uninsured motor vehicle" did not include a vehicle "[d]esigned mainly for use off public roads while not on public roads." *Id.*, ¶¶4, 8. We agreed, concluding that the term "designed" referred to the intended purpose or use of the vehicle at the time of the accident and the phrase "while not on public roads" also referred to conditions at the time of the accident. *Id.*, ¶¶11-13. Like the demolition derby vehicle in *Schleusner*, the boat in this case was not designed for use mainly on a public road and was not being used on a public road at the time of the accident.

¶11 The Cullens offer several arguments in favor of coverage, none of which are persuasive. First, they argue that Franecki's boat falls within the Erie policy's definition of the term "motor vehicle" because it is a self-propelled vehicle that must be registered in Wisconsin. *See* WIS. STAT. § 30.51 (2023-24).[2] Relatedly, they cite *Olson v. Farrar*, 2012 WI 3, 338 Wis. 2d 215, 809 N.W.2d 1, in which our supreme court concluded that the definition of "motor vehicle" in a

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

farmowners' policy was ambiguous and construed the policy in favor of coverage. *Id.*, ¶¶60-61. These arguments are not enough to establish coverage under the UM/UIM endorsement. The Cullens' focus on the definition of "motor vehicle" in the Erie policy is misplaced because the UM/UIM endorsement does not provide coverage for damages resulting from an accident involving any "motor vehicle." The endorsement only extends coverage to "bodily injury that **'anyone we protect'** … is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle'" or "an underinsured motor vehicle." It further specifies that coverage is limited to damages that "result from a motor vehicle accident arising out of the ownership, maintenance or use of the **'uninsured motor vehicle'** or **'underinsured motor vehicle'** as a **'motor vehicle**.'" Even if Franecki's boat is a "motor vehicle" under Erie's policy, there is no UM/UIM coverage because the boat is not an "uninsured motor vehicle" or an "underinsured motor vehicle."

¶12     Next, the Cullens argue that the relevant portions of the definitions of "uninsured motor vehicle" or "underinsured motor vehicle," which state that those terms do not include "**'motor vehicles'** … designed for use mainly off public roads while not on public roads," are exclusionary in nature and that the circuit court erred in not construing the language narrowly and in the Cullens' favor. They also note that boats like Franecki's "are often … transport[ed] via trailers … over public or private roads." This argument fails because the definitions of uninsured motor vehicle and underinsured motor vehicle are not exclusions, they are definitions. Exclusions to the coverage provided in the endorsement are set forth in a separate section of the endorsement. But even if the definitional language at issue was an exclusion, the rule requiring narrow construction applies only if an exclusion's effect is uncertain. *See American Girl*,

268 Wis. 2d 16, ¶24. Here, there is no uncertain effect. The definitional language says the vehicle cannot be "designed for use mainly off public roads[.]" A reasonable insured would think a boat is not "designed for use mainly off public roads." Boats are designed for use in water; a reasonable insured would not think that their main use occurs when they are being transported on a trailer.

¶13 Finally, the Cullens claim that the policy contains a "contextual" ambiguity because: (1) Erie used "obfuscatory language" in the definitions of "uninsured motor vehicle" and "underinsured motor vehicle" to bar coverage for damages caused by boats; and (2) the Cullens "assumed, like most consumers, that [UM/UIM] coverage would be personal, portable and follow them whether it was on foot, in a motor vehicle or on a jet ski." Because, in their view, the policy lacks a "clear exclusion" applicable to the underlying accident, they contend that it is, at best, ambiguous and we should return the case to the circuit court so that it can "consider and make findings as to whether and what extent of ambiguity existed within the Erie policy."

¶14 This argument fails because we have concluded that Franecki's boat satisfies both of the conditions that render it not an uninsured or underinsured motor vehicle and is thus outside the scope of UM/UIM coverage. The relevant policy language, though it does not specifically mention boats or watercraft, is nonetheless clear and straightforward. And the Cullens' subjective expectations about the scope of UM/UIM coverage under the policy do not furnish a basis to ignore or rewrite that language. The circuit court was correct in determining that the boat Franecki was operating at the time of the accident was not an uninsured or underinsured motor vehicle, and thus Erie's policy did not cover the Cullens' claimed damages.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.